802 F.2d 459
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bernard E. PINCUS and Max J. Pincus, Plaintiffs-Appellees,
v.
THE OUTLET COMPANY, Defendant-Appellant.
 No. 85-11180.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1986.
 
 Before KRUPANSKY and WELLFORD, Circuit Judges; and PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The defendant-appellant herein appeals summary judgment entered for the plaintiff in an action predicated upon diversity jurisdiction. In that circumstance, we are, of course, reliant upon the applicable law of the state wherein the action arose, in this instance, the State of Michigan. Underlying this action for breach of contract were employment and consultation contracts entered into by plaintiffs appellees Max J. Pincus and his brother, Bernard J. Pincus, respectively, and the defendant-appellant Outlet Company. Judgments based upon a jury verdict were entered in favor of both Bernard and Max Pincus, but presumably because the judgment in favor of Bernard Pincus was in a substantially smaller amount, Outlet chose to pay that judgment and perfected this appeal only from the judgment in favor of Max Pincus. Accordingly, no further reference to Bernard E. Pincus will be made, and "Pincus" will hereinafter refer to Max J. Pincus.
 
 
 2
 Prior to May 1977, Pincus was an officer and shareholder of Hughes and Hatcher, Inc. During that month, Outlet purchased all the assets of hughes, arid pursuant to the agreement of sale Outlet etitered into a written employment contract with Pincus. Under the terms of that contract he was to be employed from September 28, 1977, through July 31, 1982, as President and Chief Operating Officer of Outlet's Hughes and Hatcher division. The contract included this provision:
 
 
 3
 This agreement contains the entire agreement between the parties which may not be changed orally but only by agreement in writing signed by the party against whom enforcement of any waiver, change, modification or discharge is sought.
 
 
 4
 On September 29, 1977, the day following the commencement of Pincus' employment under the contract, Outlet formed a wholly owned subsidiary, Hughes & Hatcher, Inc. ("Outlet-Huahes"). By three separate documents effective September 29, 1977, Outlet transferred and assigned to this subsidiary all accounts receivable, lease agreements, and fixed and tangible assets acquired by Outlet from Hughes under the Agreement of Sale. By an additional document entitled "Assumption of Liabilities" Outlet-Hughes "assum[ed] and agree(d] to ... pay ... all obligations of Outlet under an Agreement of Sale dated May 11, 1977, ... as the same may exist on the date thereof." Pincus signed this agreement as vice-president of Outlet-Hughes, and his salary and benefits thereafter came from Outlet-Hughes. Piricus' only active relationship with Outlet was his duty to report on Outlet-Hughes' status.
 
 
 5
 In November of 1980, Outlet sold all of the outstanding shares of capital stock in Outlet-Hughes to United Department Stores ("UDS"). Prior to that sale, Outlet obtained resignations from all officers and directors, including Pincus. Three letters between Pincus and Outlet relating to his resignation were received in evidence. The first, dated November 13, 1980, from Pincus to the Board of Directors of Outlet-Hughes, contained this sentence:
 
 
 6
 This resignation is tendered upon the express understanding that it shall not affect in any manner whatsoever the Agreement between the undersigned and Outlet, dated September 28, 1977, nor any of Outlet's obligations thereunder.
 
 
 7
 The second letter, dated November 15, 1980, and signed by the president of Outlet, Bruce Sundlun, a vice-president of Outlet-Hughes, Gerald Scher, and the Chairman of UDS, Wallace R. Plapinger stated in relevant part:
 
 
 8
 This will confirm that no claim will be made that such resignation in any way affects, or is a -violation of, any agreenient of employment, consultancy or the like, between yourself (Max Pincus) and Hughes & Hatcher, and/or the Outlet Company.
 
 
 9
 The third letter dated November 17, 1980, is Pincus' formal resignation, accepted by the vice-president general counsel of Outlet, Gerald Scher, on November 19, 1980. That letter contained this statement:
 
 
 10
 In so resigning, it is understood that I am doing so without any affect [sic] upoil any agreement of employment, consultancy or the like which I may have with you and/or The Outlet Company.
 
 
 11
 Following its acquisition of all of the issued and outstanding stock of Outlet Hughes, UDS expressly assumed the obligations under Piticus' contract. Pincus was appointed executive vice-president of UDS and reported directly to Gerald Nathanson, UDS' chief executive officer. During the period late November 1980 to Jailuary 1982 Pincus worked exclusively for UDS. On January 25, 1982, UDS and Outlet-Hughes filed petitions under Chapter 11 of the Bankruptcy Code, ano at that time, UDS ceased its payments to Pincus. 0 R 3anuary 29, 1982, Pincus' courisel made demand on Outlet to honor its contractual obligation under the employment agreement. When Outlet did not make any payments to Pincus, he commenced this action. At the close of discovery, Pincus filed his motion for summary judgment, which was granted by the district court. The district court also granted a second summary judgment motion filed by Pincus for costs, damages, and expenses. This appeal followed.
 
 
 12
 The primary issue is whether the case was in proper posture for summary judgment under the provisions of Rule 56(c), Fed. R. Civ. P.; more specifically, did a genuine issue of material fact exist regarding Outlet's affirmative defense that a novation to the employment contract occurred which relieved it of its duty to pay Pincus. If that issue is resolved negatively to appellant, attention must be directed to a secondary issue raised by Pincus --sliould double costs and attorneys' fees be assessed against Outlet in favor of Pincus. Outlet asserts that it raised a triable issue of fact regarding its contention that a novation of the employment contract occurred when the contract was assigned as part of an assumptioll of liability to the subsidiary and when Pincus became employed by UDS after the subsidiary was assigned to it. Outlet contends that its obligation to Pincus was extinguished and transferred to the assignee upon its acceptance of the assignment.
 
 
 13
 Under the law of the State of Michigan, the elements essential to a novation are that the parties be capable of contracting, that a valid obligation capable of being exist under a contract, that all parties to the substitution consent thereto on the basis of sufficient consideration, and that the old obligation be extinguished and a valid new obligation created. Ceabuske v. Smolarz, 229 Mich. 100, 101-02 (1924); Harrington-Wiard Co. v. Blomstrom Mfg. Co., 166 Mich. 276, 286-87 (1911); Macklin v. Brown, 111 Mich. App. 110, 111 (1991). The first and second elements have been clearly satisfied. Only the third and fourth require consideration. In this regard, in order for Outlet to establish a novation, it must establish the existence of an agreement between itself aild Pincus to relieve Outlet of liability, consideration from Outlet to Pincus for the release of Outlet and an agreement between them to rely solely upon Outlet-Hughes or UDS for paymetit under the original employment agreement. Our careful review of the record in a light most favorable to Outlet, the non-movant, reveals that Outlet raised no genuine material issues of fact with regard to these elemeiits. Oil the contrary, the exchange of correspondence referenced and quoted above clearly establishes that the parties had no intention of altering the employment contract which under its terms could only be modified in writing. Those letters affirmatively and conclusively demonstrate that Outlet's obligation to compensate Pincus was to remain unaltered by any subsequent occurrences.
 
 
 14
 We reject Outlet's assertion that a material fact issue was raised because Pincus' intent in agreeing to the first assignment was not clear. Pincus submitted a sworn affidavit that when he signed the assignment, which transferred his employment agreement to the subsidiary, he did so solely in his capacity as a corporate officer and that he never intended to release Outlet from its obligation. Because Outlet has never countered these averments and has relied solely on conclusory allegations of intent, summary judgment was proper. See Celotex Corp. v. Catrett, 54 U.S.L.W. 4775, 4777 (June 25, 1986). Similarly, Outlet's assertion that issues of material factwere raised by Pincus' conduct in working for UDS, receipt of salary from UDS, and attempted negotiations with UDS to modify his agreement has no merit. Consent to novation cannot be implied merely from performance of or the payment by a third party of a debt owed originally by the obligor. See Harrington-Wiard Co., 166 Mich. at 287-88; Macklin, 111 Mich. App. at 113. Nor did Pincus' attempt to modify his contract raise a material fact issue relevant to the existence of a novation. Regardless of any effort to modify his contract, Pincus never aareed with Outlet to release it from liability nor did he ever receive any consideration for the alleged novation. We, therefore, affirm the district court's grant of summary judgment.
 
 
 15
 Pincus has also requested award of attorneys' fees and taxation of double costs under Rule 38, Fed. R. App. P., on the ground that Outlet's appeal was frivolous. See id. (Notes of Advisory Committee on Appellate Rules). On the basis of the record before us, we agree that the appeal was frivolous and that costs and fees should be awarded Pincus. Outlet improperly removed the case to the U.S. Bankruptcy Court for the Eastern District of Michigan and from there caused it to be transferred to the U.S. Bankruptcy Court for the Southern District of New York under circumstances wtlich strongly suggest that delay was the predominate motivation. Ultimately the case was remanded to the district court upon Pincus' motion; however, a delay of a year and a half resulted. Followina the remand various of Outlet's filings and representations can be characterized as erroneous and dilatory if not deliberately misleading. Finally, we note that Outlet's appellate brief corisists of much verbiage and little in the way of substantive argument, and what argument it sets forth is totally without merit. Accorditigly, we exercise our discretion to award attorneys' fees and double costs. The taxation of double costs is authorized and the case remanded for the determination of appropriate attorneys' fees by the district court.
 
 
 16
 Affirmed and reafanded.