## DEVITT v QUIRK

Docket No. 47545. Submitted June 16, 1980, at Detroit.—Decided April 7, 1981.

Harold and Ruby Devitt sold the assets of a ceramics business known as "Clay and Play" to John and Betty Quirk, taking cash and a promissory note. The Quirks later sold most of the assets, along with a promise not to wholesale greenware to any other dealer for a period of five years, to John and Ronda Zuehlke in exchange for, among other things, an assumption of the Quirks' note to the Devitts. The Quirks retained certain molds in which the Devitts had a security interest. The Devitts consented to the sale in a written document containing no language releasing the Quirks from the original obligation. After the sale, the Quirks opened a new ceramics business and made sales to other dealers at a discount without charging sales tax.

The Devitts brought an action in the Oscoda Circuit Court against the Quirks and the Zuelkes alleging breach of contract. The court, Allan C. Miller, J., granted judgment for plaintiffs, held that the Quirks had breached their contract and directed that all the subject properties in the possession of the Quirks or the Zuehlkes be held in constructive trust for the benefit of the Devitts. The Quirks appeal. *Held:*

1. The elements necessary to establish a novation are: 1) parties capable of contracting; 2) a valid prior obligation to be displaced; 3) the consent of all parties to the substitution based upon sufficient consideration; and 4) the extinction of the old obligation and the creation of a valid new one. No novation took place to release the Quirks from liability.

2. The Quirks' breach of their covenant not to compete was a material breach of contract.

3. Neither laches nor inability to restore the Quirks to the status quo ante prevent rescission.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur 2d, Novation §§ 4, 10.
[2] 67 Am Jur 2d, Sales § 308.

1. NOVATION — CONTRACTS.

> The elements necessary to establish a novation are: 1) parties capable of contracting; 2) a valid prior obligation to be displaced; 3) the consent of all parties to the substitution based upon sufficient consideration; and 4) the extinction of the old obligation and the creation of a valid new one.

2. SALES — SELLER'S DUTY.

> A seller may not derogate from his own sale or destroy what he transferred or depreciate what he sold.

*Larry L. Carl,* for plaintiffs.

*John L. Rise,* for defendants Quirk.

*Braun, Kendrick, Finkbeiner, Schafer & Murphy* (by *Kenneth W. Kable),* for defendants Zuehlke.

Before: N. J. KAUFMAN, P.J., and CYNAR and J. E. TOWNSEND,* JJ.

J. E. TOWNSEND, J. This dispute arose in connection with the sale and resale of a ceramics business.

On October 13, 1973, defendants Quirk purchased a ceramics business from plaintiffs Devitt for the sum of $55,000. Plaintiffs sold the assets of the business known as "Clay and Play", including molds, equipment, fixtures and inventory, receiving $10,000 in cash and a promissory note in the amount of $45,000.

In December, 1975, defendants Quirk sold most of the assets of the ceramics business to defendants Zuehlke in return for the Zuehlkes' agreement to assume the Quirks' note to Devitt, which had an outstanding balance of $33,080.49, plus a cash payment of $6,000 and a line of credit in the amount of $3,581. In the transaction, the Quirks retained the molds previously sold to them by the

---

* Circuit judge, sitting on the Court of Appeals by assignment.

Devitts subject to the Devitts' security interest. The Devitts consented to the sale from the Quirks to the Zuehlkes by written document which contained no language releasing the Quirks from the original obligation. An agreement between the Quirks and the Zuehlkes executed December 9, 1975, contained an acknowledgement that John and Betty Quirk were still indebted to Harold Devitt and Ruby Devitt, and the agreement was signed by John Quirk and Betty Quirk. Paragraph 10 of the contract of sale between the Quirks and Zuehlkes covenanted that sellers would not wholesale greenware to any other dealers, unless otherwise agreed in writing between the parties thereto, for a period of five years after the agreement.

Within two months after the sale from the Quirks to the Zuehlkes, the Quirks opened a new ceramics business known as "John's Place". The Zuehlkes closed their business in July, 1977, approximately 18 months after the purchase. At that time, the Zuehlkes had in their possession approximately $1,900 worth of fixtures and $15,000 worth of inventory, and the Devitt loan had been reduced to $31,831.38.

On August 29, 1977, the Devitts commenced the civil proceeding against the Quirks and Zuehlkes alleging breach of contract. The Quirks asserted that they were discharged at the time the Zuehlkes purchased the business and also cross-claimed against the Zuehlkes, asserting that they were solely responsible for any judgment in favor of plaintiff. Upon the completion of trial before Oscoda County Circuit Judge Allan C. Miller, Judge Miller granted judgment to plaintiffs against the Quirks, determined that the Quirks had breached their covenant not to compete with the Zuehlkes, ordered a rescission of the Quirk-

Zuehlke transaction and directed that all properties in the Zuehlkes' and the Quirks' possession be held in constructive trust for the benefit of the plaintiffs.

The Quirks appeal and present three issues to this Court. First, were the Quirks released from liability by a novation at the time the Zuehlkes purchased the business?

Second, was there sufficient evidence to support the trial court's finding of a fraud and breach of contract?

Third, should laches or the inability to restore the Quirks to the status quo prevent a rescission of the Quirk-Zuehlke contract?

Michigan cases have consistently required the presence of the following four elements to establish novation:

(1) parties capable of contracting;

(2) a valid prior obligation to be displaced;

(3) the consent of all parties to the substitution based upon sufficient consideration; and

(4) the extinction of the old obligation and the creation of a valid new one. *National Premium Budget Plan Corp v Siegel Agency, Inc,* 43 Mich App 29, 35; 204 NW2d 30 (1972), *Harrington-Wiard Co v Blomstrom Manufacturing Co,* 166 Mich 276, 286-288; 131 NW 559 (1911).

We believe that three basic facts supported the court's determination that release through novation did not occur. The Quirks retained molds subject to the prior security interest of the Devitts. The Quirks, by written document executed shortly after the transfer to the Zuehlkes, acknowledged the continuance of their obligation to the Devitts. The consent executed by the Devitts to the Quirk-Zuehlke transaction contained no words of release

of the Quirks. The Devitts testified that no release or substitution was intended.

Such facts furnish ample basis for the court to conclude that novation did not occur and the Quirks were not released from their obligation to the Devitts.

Was there fraud in the inducement or a material breach of the contract between the Quirks and Zuehlkes?

The key language in the covenant not to compete is sellers' covenant that: "They will not wholesale greenware to any other dealers * * *". Mr. Quirk admitted giving dealers a discount in the range of something like 20 percent and that he charged no sales tax to dealers who purchased through him. Mrs. Quirk admitted to selling to dealers at a discount. Witness Ray Herbert Arnold, a dealer, testified that he purchased greenware at a 40 percent discount from "John's Place", the Quirks' place of business. Mr. Quirk earlier testified that the normal markup over wholesale on greenware was 40 percent. The testimony supports a finding that sellers sold greenware items to dealers at a discount and without charging sales tax under circumstances when it could be assumed that the dealers were not the ultimate consumers. The Quirks argue that there was an absence of proof that the sales to dealers were in fact in large quantity and, therefore, that such sales do not meet the classic definition of "wholesale". They further argue that the proofs at most establish a minimal rather than a material breach of the covenant.

The reverse side of the "retail-wholesale" definitional issue was considered by the Michigan Supreme Court in the case of *Magee v Brown,* 347 Mich 638; 81 NW2d 413 (1957). The Court in that case recognized the principle that a seller is not

allowed to derogate from his own sale and is not at liberty to destroy what he transferred or depreciate what he sold. There is evidence in this case that the sale of greenware to other dealers at a discount and without charging sales tax was a common course of conduct on the part of the Quirks. We believe the trial court was correct in viewing the covenant not to compete as an important bargained-for contract right, the breach of which would materially affect the value of the bargain to the Zuehlkes. Having concluded that the Quirks' breach of their covenant not to compete constituted a material breach of contract, we need not examine the strength or weakness of the evidence relating to the Zuehlkes' claim of fraud.

Did laches or an inability to restore the Quirks to the status quo prevent rescission in this case?

The period of time between the acquisition of the business by the Zuehlkes and the closing of such business, the nonpayment of amounts owing to the Devitts, and commencement of suit by the Devitts, is approximately 19 months. The Quirks' breach of their covenant not to compete was an ongoing breach not immediately known to the Zuehlkes. The trial court concluded and this Court agrees that the issue of rescission was raised within a reasonable length of time after the breach by the Quirks became known to the Zuehlkes. The Quirks failed to show any circumstances that would render rescission inequitable and the trial court took appropriate action to impose a constructive trust for the benefit of the Quirks and the Devitts upon all remaining assets involved in the transaction which were in the Zuehlkes' custody. Thus, the Zuehlkes were ready, willing and able to return all remaining assets to the Quirks. The Quirks' rights to such assets were confirmed by the trial court.

The decision of the trial court is affirmed.