MACKLIN v BROWN

Docket No. 53853. Submitted June 4, 1981, at Grand Rapids.—Decided November 3, 1981.

David L. Brown, Carol D. Brown and Edwin Spragg purchased a business and its assets (a building and fixtures) from an estate being administered by the Southern Michigan National Bank and formed a corporation known as Coldwater Airport Inn, Inc. The purchase was made by means of a downpayment and a promissory note providing for monthly payments. Upon distribution of the estate the note was assigned to Norma K. Macklin and Gloria J. Berry but the bank continued to collect the payments. Twenty-one payments were made on the note, then the business was closed. The bank brought an action on the note against the Browns, Spragg, and Coldwater Airport Inn, Inc. The property was sold, the defendants received credit, and the bank was granted a deficiency judgment against the defendants, Branch Circuit Court, Thomas C. Megargle, J. Defendants Brown and the corporation appeal, alleging that the bank's acceptance of corporate checks in payment of the note created a novation and that the interest rate on the note was usurious. *Held:*

1. The elements of a novation were not established. Even though the corporation's checks were accepted there was no consent by the bank or by the plaintiffs for the release of the individual defendants on the note. The trial court did not err by granting a deficiency judgment against all the defendants.

2. The building and fixtures, regardless of their appraised value in relation to the price the defendants paid for the business, were the "primary security" for the note within the meaning of a statutory exception to the general usury statute. Under this exception, the agreed-upon rate of interest was not usurious.

Affirmed.

REFERENCES FOR POINTS IN HEADNOTES
[1] 58 Am Jur 2d, Novation §§ 1, 10.
[2] 58 Am Jur 2d, Novation § 15.
[3] 45 Am Jur 2d, Interest and Usury § 241.

1. CONTRACTS — NOVATION.

   The elements necessary to a finding of a novation are: (1) parties capable of contracting; (2) a valid obligation to be displaced; (3) the consent of all parties to the substitution based upon sufficient consideration; and (4) the extinction of the old obligation and the creation of a valid new one.

2. CONTRACTS — NOVATION — PAYMENT BY THIRD PARTY.

   Payment on a debt by a third party, which payment is accepted by the creditor, does not establish a novation.

3. SECURED TRANSACTIONS — PRIMARY SECURITY — USURY — STATUTES.

   A "primary security", as used in a statutory exception to the general usury statute, is not required to be a security whose value is any particular percentage of the debt; rather, it is that security which the creditor would sell first and to which he would look to obtain the greatest yield to pay the indebtedness (MCL 438.31c[2]; MSA 19.15[1c][2]).

*Biringer, Jacox & Hutchinson, P.C.,* for plaintiffs.

*Richard F. Baker,* for defendants Brown and Coldwater Airport Inn, Inc.

Before: R. B. BURNS, P.J., and ALLEN and T. GILLESPIE,* JJ.

PER CURIAM. Mack's Airport Inn in Coldwater, Michigan, in 1977 consisted of a building and fixtures on leased land. It was in the estate of Wesley O. Macklin, deceased, which was being administered by the trust department of Southern Michigan National Bank.

In January 1977 the defendants, David L. Brown, Carol Dawn Brown and Edwin Spragg, purchased the business and its assets from the estate for $110,000, the terms of payment being $27,500 down and $82,500 in a promissory note with payments of $1,000 a month including inter-

---

* Circuit judge, sitting on the Court of Appeals by assignment.

est at 8% per annum. At the closing, or shortly thereafter, the trust officer of the bank was informed that the defendants intended to form a corporation known as Coldwater Airport Inn, Inc. The trust officer informed them that he was looking to the parties as individuals for payment. The plaintiffs are assignees of the note on distribution of the estate for whom the bank still collected the payments. There were 21 payments made with Coldwater Airport Inn checks before the defendants closed the business. The bank sold the property and sought a deficiency judgment. The defense was novation and usury. In a bench trial, the trial judge granted a deficiency judgment for $26,276.04. Defendants Brown and the corporation appeal.

The first argument of the defense was that, by acceptance of the corporate checks in payment of the note, there was a novation and, therefore, the granting of a deficiency judgment against the defendants-appellants was erroneous.

We cannot agree. The court used the yardstick which has been repeated verbatim by our appellate courts for 70 years to measure whether a novation has been established:

(1) parties capable of contracting;

(2) a valid obligation to be displaced;

(3) the consent of all parties to the substitution based upon sufficient consideration; and

(4) the extinction of the old obligation and the creation of a valid new one.

*In re Dunneback's Estate,* 302 Mich 73; 4 NW2d 472 (1942), *George Realty Co v Gulf Refining Co,* 275 Mich 442; 266 NW 411 (1936), *Harrington-Wiard Co v Blomstrom Manufacturing Co,* 166 Mich 276, 286-288; 131 NW 559 (1911), *Devitt v Quirk,* 105 Mich App 94, 97; 306 NW2d 405 (1981),

*National Premium Budget Plan Corp v Siegel Agency, Inc,* 43 Mich App 29, 35; 204 NW2d 30 (1972).

Payment on a debt by a third party which is accepted by a creditor does not establish a novation. *Hutchings v Securities Exchange Corp,* 287 Mich 701; 284 NW 614 (1939).

The defendants did not have the consent of the bank or the plaintiffs for defendants' release on the note, even though the corporation checks were accepted. The defendants-appellants did not, therefore, meet elements three and four of the rule governing the establishment of a novation and the trial judge was correct in so ruling.

Failing to establish a novation, the individual defendants then maintain that if they are liable as individuals rather than the debts being a corporate liability, then the creditor is bound by the Michigan usury statute, MCL 438.31; MSA 19.15(1), which limits interest to 7% and that the court erred by allowing plaintiffs to recover the agreed-upon rate of 8%.

The plaintiffs set up an exception to the statute which is found in MCL 438.31c(2); MSA 19.15(1c)(2) and reads in part:

"For the period ending on December 31, 1981, it is lawful for the parties to a *note,* bond, or other evidence of indebtedness, executed after August 11, 1969, the *bona fide primary security for which is a first lien against real property, or a land lease if the tenant owns a majority interest in the improvements thereon,* or the parties to a land contract, to agree in writing for the payment of any rate of interest * * *." (Emphasis supplied.)

This section is further limited so that such loans may not exceed 11% interest per annum. MCL 438.31c(6); MSA 19.15(1c)(6).

The defendants' argument at this point is that this statute does not apply because the sale was for $110,000 and the appraisal in the estate valued the building and fixtures at $47,500 and, therefore, it could not be the "bona fide primary security" because it was not more than 50% of the sale price.

"Primary security" is not defined by the statute or case law. We believe the words to mean that security which the creditor would sell first and to which he would look to obtain the greatest yield to pay the indebtedness due. "Primary" is defined as "First in order of time, or development, or in intention". Black's Law Dictionary (4th ed), p 1354. We do not believe the Legislature intended to tie the security to any fractional percentage of the debt.

Certainly in this case the sale price of the business was irrelevant and the building and fixtures on the leased land were the "primary security" for the $82,500 note.

The court did not err in finding that any interest rate of 11% or less was not usurious.

Affirmed, with costs to the appellees.