*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0226P (6th Cir.)
File Name: 01a0226p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

IMPERIAL HOTELS
CORPORATION,
   *Plaintiff-Appellant,*

  *v.*

ARTHUR P. DORE; JAY AMBE
CORPORATION; and DORE
DEVELOPMENT COMPANY,
    *Defendants,*

MAINSTREAM CAPITAL
CORPORATION,
   *Defendant-Appellee.*

No. 00-1198

Appeal from the United States District Court
for the Eastern District of Michigan at Bay City.
No. 98-10139—Victoria A. Roberts, District Judge.

Argued: June 5, 2001

Decided and Filed: July 18, 2001

Before: GUY, BOGGS, and GILMAN, Circuit Judges.

1

failed to draw all reasonable inferences in favor of the non-movant, the court erred in granting summary judgment. Accordingly, we **REVERSE** and **REMAND** for proceedings consistent with this opinion.

---

**COUNSEL**

**ARGUED:** David M. Caplan, CAPLAN & ASSOCIATES, Farmington Hills, Michigan, for Appellant. J. David Perez, HURLBURT, TSIROS, ALLWEIL & PEREZ, Saginaw, Michigan, for Appellee. **ON BRIEF:** David M. Caplan, CAPLAN & ASSOCIATES, Farmington Hills, Michigan, for Appellant. Lawrence A. Hurlburt, HURLBURT, TSIROS, ALLWEIL & PEREZ, Saginaw, Michigan, for Appellee.

---

**OPINION**

---

BOGGS, Circuit Judge. Imperial Hotels Corp. sued three corporations and one individual to collect on a note originally executed by another party. On Mainstream Capital Corp.'s motion for summary judgment, the district court held that Imperial was an intended third-party beneficiary of Mainstream Capital Corp.'s agreement with Jay Ambe Corp. to assume responsibility for payments on the original note. The court further held that a subsequent assumption agreement between Dore Development Co. and Jay Ambe Corp., to which Imperial expressed consent, constituted a novation relieving Mainstream of its liability to Imperial. Because Michigan law on novations looks to the subjective intent of all the parties and because in this case there is a genuine issue of material fact as to intent, the court erred in entering summary judgment for Mainstream. We therefore reverse and remand for further proceedings.

**I**

This diversity case arises out of a dispute concerning the financing of a motel in Bay City, Michigan, known as the Gateway Regency Motel. In 1983, Nick Khatiwala purchased

permit assumption and grant release, summary judgment is inappropriate because a trier of fact must determine from all the facts and circumstances whether the creditor intended to release the original debtor. A survey of jurisdictions across the county indicates adherence to just this sort of rule.[2] Therefore, we hold that a Michigan court would deny summary judgment on the question of novation when the party urging novation relies on a written statement of bare consent to an assumption and on the surrounding circumstances.

Michigan law requires intent to *release*, and Mainstream's contention that "[t]here is no legitimate dispute that [Imperial] expressly consented to the substitution of Dore Development for Mainstream as obligee of the monies then owed to [Imperial]" is simply wrong. Nothing in the record reveals express consent to anything more than Dore Development's assumption, although a factfinder might conclude, after hearing the conflicting evidence and the arguments of both parties, that Imperial concomitantly intended to release Mainstream and thereby effect a substitution. But that question is properly posed to a trier of fact.

### III

Because the evidence before the district court contained unresolved genuine issues of material fact, and the court

---

[2] *See Pinnacle Holding, Inc. v. Biologics, Inc.*, 643 So. 2d 642, 643 (Fla. Dist. Ct. App. 1994); *Feely v. First Am. Bank*, 424 S.E.2d 345, 348-49 (Ga. Ct. App. 1992); *Phillips & Arnold, Inc. v. Frederick J. Borgsmiller, Inc.*, 462 N.E.2d 924, 929 (Ill. App. Ct. 1984); *Wheeler v. Woods*, 219 N.W. 407, 409 (Iowa 1928); *Tannhauser v. Shea*, 295 P. 268, 270 (Mont. 1930); *United Fire Ins. Co. v. McClelland*, 780 P.2d 193, 196 (Nev. 1989); *Schmitt v. Berwick Township*, 488 N.W.2d 398, 401 (N.D. 1992); *Citizens State Bank v. Richart*, 476 N.E.2d 383, 385 (Ohio Ct. App. 1984); *First Am. Commerce Co. v. Washington Mut. Sav. Bank*, 743 P.2d 1193, 1195 (Utah 1987) ("Whether an agreement is a novation is a matter of intent," not law). Only when the fact of mutual assent to an agreement is clear but the parties dispute the legal meaning of the terms they used is the question one of law. *See Barbara Oil Co. v. Kansas Gas Supply Corp.*, 827 P.2d 24 (Kan. 1992).

---

from a division of Imperial '400' National, Inc.,[1] the furniture, fixtures, furnishings, and equipment of a motel located at 50 Sixth Street in Bay City, along with the leasehold interest in and improvements upon that property. Khatiwala executed a security agreement and a promissory note in favor of Imperial in the amount of $160,000, payable over 25 years with 10% annual interest on the unpaid balance. A 1984 amendment to the note raised the interest rate to 10.5% and re-amortized the payment schedule. Neither the original note nor the amendment (collectively, the "Khatiwala Note") contained an acceleration clause, although the final note automatically raised the interest rate to 11% should Khatiwala transfer his interest in the property.

In the ensuing years, apparently, Khatiwala transferred his rights in the motel and obligations under the Khatiwala Note to Jay Ambe Corp. ("Ambe"). In September 1987, Mainstream Capital Corp. ("Mainstream") purchased the motel from Ambe, at which time it executed a note in favor of Ambe in the amount of $318,000. This "Mainstream Note," which gave Ambe the right to accelerate Mainstream's debt in the event of default, provided that Mainstream assumed Ambe's debt payable to Imperial based on the Khatiwala Note, on which $153,095.81 in principal remained outstanding. Mainstream agreed to make its payments to Ambe, with Ambe to remit payments to Imperial in accordance with the terms of the Khatiwala Note. This sort of arrangement is known in the trade as "wrap-around" financing because, as here, a promissory note encompasses a promise to pay an amount equal to a prior existing debt plus additional funds advanced by a second lender. *See Mitchell v. Trustees of United States Real Estate Inv. Trust*, 375 N.W.2d 424, 428 (Mich. Ct. App. 1985).

---

[1] At some point in the late 1980s, Imperial Hotels Corp. became the successor-in-interest to Imperial '400' National, Inc. For the sake of clarity, this opinion refers to both companies, interchangeably, as "Imperial."

In 1989, Mainstream defaulted on its obligation to Ambe under the Mainstream Note, but Ambe did not accelerate the indebtedness. On September 9, 1990, Mainstream and Arthur P. Dore, then acting "only as agent for a corporation then in existence or to be formed" (presumably Dore Development Co.), entered into a "Purchase Agreement" whereby Dore promised to purchase the motel from Mainstream for a total of $550,000. This purchase price included a cash component, a promise concerning services to be rendered, and the assumption of five separate debts. With respect to two of these debts, the Purchase Agreement provided: "F) The assumption of the principal balance of the outstanding obligation as is evidenced by a Note and Mortgage due to [Imperial]," a copy of which was attached, and "G) The assumption of the principal balance of the outstanding obligation as is evidenced by a Note as amended and extended due to Jay Ambe Corp.," a copy of which was attached. Thus, the parties planned to have Dore Development Co.'s obligation wrap around both the Khatiwala Note and the Mainstream Note. The Purchase Agreement required Dore Development Co. to ascertain from Imperial the amount of debt due and outstanding under the Khatiwala Note.

Ambe and Dore Development Co. closed their transaction on November 20, 1990. As part of the consideration called for by the Purchase Agreement, Ambe and Dore Development Co. executed a "Debt Assumption Agreement," effective November 20, 1990, by which Dore Development assumed Mainstream's obligations. Mainstream was not a party to this agreement, nor was Imperial. Jay Ambe Corp. and Dore Development Co. executed the Debt Assumption Agreement, as did Arthur P. Dore as guarantor. As of November 20, 1990, $146,240.48 in outstanding principal remained due on the Khatiwala Note, with interest accruing at 11%. Under the Mainstream Note, Mainstream owed Jay Ambe Corp. $30,000 in principal, plus interest and a late fee, for a total indebtedness of $38,798.18. By the Debt Assumption Agreement, Ambe amended the Mainstream Note, and Dore Development Co. assumed it as amended. The provisions "relating to payments to [Imperial] . . . remain[ed]

Aldriches. An agreement was executed by plaintiffs, Freud, Fry, and the Aldriches, in which the Aldriches agreed to make payments on their contract with Fry directly to plaintiff, whereupon plaintiff would credit Freud, Freud credit Fry, and Fry credit the Aldriches on their respective contracts. If the Aldriches made all payments, plaintiff promised to deed the property to Freud, who would deed it to Fry, who would deed it to the Aldriches. Defendant was not a party to this four-party contract; his name was not mentioned in it, nor did he have notice of its execution. The court explained: plaintiff's "execution of the assignment, being unexplained, may have been meant either as an indorsed acknowledgment of receipt of the assignment; or it may have been intended to create privity of contract between [plaintiff] and Freud on the latter's promise to pay the contract balance, without releasing [defendant]; or as a complete novation of Freud for [defendant] as contract vendee. If the latter was intended, a legal novation occurred even without express agreement with [defendant]." *Gorman*, 262 N.W. at 304. The court examined the surrounding circumstances, particularly the four-party agreement, and affirmed the lower court's finding of novation because "[i]t would be difficult, in the absence of a most explicit and direct contract, to imagine circumstances more clearly indicating an intention by vendor and assignee to expel the vendee from the transaction and continue it as between themselves." *Id.* at 305.

As Mainstream observes, *Ceabuske* involved a direct warning of defendant's liability despite plaintiff's consent to the assignment to a third party. The *Fender* court went no further than holding that payments alone do not prove a novation. And *Devitt* relied in part upon the defendants' acknowledgment of continuing obligation. But these nuanced factual distinctions between the cases demonstrate that Michigan law considers the question of novation extremely fact-intensive. Each of the cases that give any procedural history reached an appellate court after a trier of fact made findings, not after summary judgment on the question of novation. Read together, these cases point toward a rule that, unless a writing conclusively shows a creditor's intent to

made no demand on the defendant until after default— 10 years after the assignment— the court rejected the defendant's claim of novation because the lower court did not err in finding that nothing indicated plaintiffs' intent to release defendants. "Had defendant desired to be relieved from his obligation, he should have secured a release in writing so providing," the court commented. *Fender*, 251 N.W. at 539.

In *Devitt v. Quirk*, the court affirmed a trial court's finding that no novation occurred because: the defendants retained property of the original sale subject to the prior security interest of the plaintiffs; the defendants, by written document executed shortly after the transfer to the third-party, acknowledged the continuance of their obligation to the plaintiffs; the consent executed by the plaintiffs to the defendant-third party transaction contained no words of release of the defendants; and the plaintiffs testified that no release or substitution was intended. *See Devitt*, 306 N.W.2d at 407.

In *Matter of Yeager Bridge & Culvert Co.*, the court reversed as clear error a finding of no novation because the record contained "evidence that all parties consented to the substitution." There, the parties reached a "mutual agreement to discharge [the original supplier] from its obligation to perform and to substitute [a new supplier] in order to provide [the promisee] with a fixed delivery date" for materials it needed to profitably fulfill its contract with the state. The trial court erred in finding the substitution of a new supplier an attempt to mitigate the promisee's damages because all parties clearly agreed to release the original supplier and substitute the new one in its place. *See Matter of Yeager Bridge & Culvert Co.*, 389 N.W.2d 99, 109-11 (Mich. Ct. App. 1986).

Finally, in *Gorman v. Butzel*, plaintiff sold land on a contract to defendant, and defendant assigned the property and note to Freud, which assignment plaintiff also signed, though without explanation. Freud later sold to Fry, who sold part of her interest to the Eddys, who sold theirs to the

unchanged." Dore Development Co. promised to repay the full $38,798.18 that Mainstream owed to Ambe by paying $10,000 immediately and the remainder in installments over time. Arthur P. Dore personally guaranteed performance of Dore Development Co.'s obligation.

As Dore Development and Ambe prepared for their November 20th closing, Imperial sent a fax to Dore Development Co.'s attorney, Kenneth Schmidt, on November 9, 1990. Signed by Imperial's Controller and Assistant Secretary, the transmission stated, "Ken, included are the numbers required to bring the note current. [Imperial] would consent to assumption of this note by Dore Development Co. provided the note is brought current per the attached worksheet." The worksheet indicated $146,240.48 in total principal outstanding, with a regular $3,060.48 principal payment and $10,723.62 in unpaid interest due as of October 31, 1990. These figures obviously correspond to the obligations under the Khatiwala Note. With interest continuing to accrue until November 20, 1990, the amount required to bring the Khatiwala Note debt current as of that day was $14,144.06. On November 20th, Schmidt sent a check in that amount to Imperial and explained that the check represented the total principal and interest then due on the note "assumed by Mainstream Capital Corporation and now assumed by my client Dore Development Co." Schmidt's letter and the payment to Imperial purported to "confirm[] your consent to the assumption of the Note by Dore Development Co. provided the Note is brought current."

Dore Development Co. continued to make payments pursuant to the Debt Assumption Agreement until August 1996. The record does not disclose why Dore Development Co. stopped making payments at that time, nor does it indicate whether Jay Ambe Corp. is making payments to Imperial under the terms of the Khatiwala Note that Ambe assumed prior to 1987.

Imperial sued Arthur P. Dore, claiming a right to recovery based on the personal guarantee he made in the Debt

Assumption Agreement. Dore filed a motion to dismiss, and the district court ultimately granted Imperial leave to amend its complaint. The amended complaint added Jay Ambe Corp., Dore Development Co., and Mainstream Capital Corp. as defendants, asserting against all defendants claims of breach of contract, breach of duty to a third-party beneficiary of a contract, and promissory estoppel. Jay Ambe Corp. was never served, so it never became a party to this litigation. Imperial eventually consented to dismissing Dore Development Co. and Arthur P. Dore from the case, with prejudice. Mainstream filed a motion to dismiss and a motion for summary judgment. Imperial conceded that it had no claims against Mainstream based on breach of contract and promissory estoppel, leaving only its third-party-beneficiary claim. Imperial did not file a cross-motion for summary judgment.

The district court held that, in the Mainstream Note, Mainstream explicitly assumed the remaining debt on the Khatiwala Note owed to Imperial, thereby intentionally undertaking to perform an act directly for Imperial's benefit. Although Mainstream sent payments to Jay Ambe Corp., it did so for the express purpose of having them remitted to Imperial. Thus, the court held Mainstream liable to Imperial on a third-party-beneficiary theory. Yet the court further held that Imperial released Mainstream from its third-party obligation under the Mainstream Note when Imperial consented to the assumption of this obligation by Dore Development Co., while Dore Development Co. supplied consideration to Imperial by bringing the Mainstream Note current. Imperial's consent to the Debt Assumption Agreement and Dore's bringing the Mainstream Note current constituted a novation that released Mainstream from its obligation, the court held.

The district court entered judgment in favor of Mainstream, and Imperial timely appealed. Mainstream has not cross-appealed, so the question of whether Imperial was a third-party beneficiary of the Mainstream Note is not before this court. The only matter presented for our consideration is

original debtor and substitute the assignee in its place). Of course, Mainstream would seem to have no reason to want to remain liable, *i.e.*, no reason to withhold consent to its release, but on this record Mainstream never expressed such consent. Indeed, an affidavit by Mainstream's vice president indicates that Mainstream and Imperial had engaged in "no communication . . . concerning any matter" after March 1989. Without communication, reaching an agreement to do anything seems rather difficult, if not impossible. *But see Gorman*, 262 N.W. at 305 (recognizing a novation where, without involving old debtor, creditor and new debtors executed a new agreement patently inconsistent with an intent to keep old debtor liable).

The district court erred in failing to draw all reasonable inferences in favor of the non-moving party, Imperial. It committed a related error in making, at the summary judgment stage, findings of fact on a question Michigan law reserves for triers of fact. Michigan cases on the subject reveal a variety of circumstances in which novations have been found, but the factual backgrounds and procedural histories of these cases confirm that Michigan law generally deems improper a grant of summary judgment on the question of novation.

In *Ceabuske v. Smolarz*, 200 N.W. 945, 945-46 (Mich. 1924), the court, reviewing conflicting evidence of intent, affirmed a jury's verdict that the plaintiff had not intended to release the defendant from obligations on a note. Plaintiff had sold a business to defendant, who in turn sold it to a third party with plaintiff's consent. Plaintiff, who had never surrendered defendant's note, obtained a note from the third party but also testified that he warned defendant that he would be responsible in the event the third party failed to pay.

In *Fender v. Feighner*, plaintiffs sold real estate to defendant, who assigned to Barker, who in turn assigned to McVay, with both assignments sent to plaintiffs. Even though plaintiffs gave McVay receipts for payment in his name, dealt directly with him when payments fell behind, and

from its third-party-beneficiary obligation under the Mainstream Note. Although Imperial may have intended to release Mainstream, its consent might just as well have meant only that it was pleased another party would become obligated to pay amounts owing under the Khatiwala Note. Imperial's having accepted payments directly from Dore Development is as consistent with this view of the facts as it is with the inference that Imperial intended to release Mainstream.

Moreover, assumption and substitution do not mean the same thing. Although the latter term may strongly imply intent to release the old debtor upon the new debtor's involvement, the former term carries no such implication. Substitution connotes assumption plus release, but assumption does not necessarily imply release. Michigan law recognizes that a creditor may consent to a new debtor's assuming an obligation without releasing the old debtor from its liability. *See Harrington-Wiard Co.*, 131 N.W. at 563 (holding that assumption of liability is not novation). The elements of a novation require the creditor's intention both that the new debtor assume the obligation and that the old debtor be released. *See id.* at 563-64; *Devitt v. Quirk*, 306 N.W.2d 405, 407 (Mich. Ct. App. 1981) (creditor's consent to a transaction between old debtor and third party did not necessarily indicate release of old debtor). The record proves *at most* that Imperial intended Dore Development to assume the Khatiwala Note obligation. Nothing in the record directly speaks to an intention by Imperial to release Mainstream; any such intention must be inferred from the surrounding circumstances. Such inferences cannot be drawn against a non-moving party at the summary judgment stage.

Additionally, nothing in the record suggests that Mainstream sought to be released. Even if Imperial intended its contacts with Dore Development to release Mainstream, Mainstream was not, evidently, a party to this supposed "novation." That is, the record does not contain evidence of the "consent of all parties to the substitution . . . ." *Macklin v. Brown*, 314 N.W.2d at 540; *cf. Keppen*, 241 N.W. at 157 (enforcing an agreement among three parties to release the

whether Imperial's "consent" to Dore Development Co. assuming the Mainstream Note's Khatiwala Note component and the circumstances surrounding the assumption constitute, as a matter of law, a novation releasing Mainstream of its third-party-beneficiary liability to Imperial.

## II

Jurisdiction over this matter derives solely from 28 U.S.C. § 1332. Accordingly, this court follows federal procedural law but must apply the substantive law of Michigan "in accordance with the then-controlling decision of the highest court of the state." *Pedigo v. UNUM Life Ins. Co.*, 145 F.3d 804, 808 (6th Cir. 1998). "To the extent that the state supreme court has not yet addressed the issue presented, it is [the federal courts'] duty to anticipate how that court would rule." *Bailey Farms, Inc. v. NOR-AM Chem. Co.*, 27 F.3d 188, 191 (6th Cir. 1994) (citing *Mahne v. Ford Motor Co.*, 900 F.2d 83, 87 (6th Cir. 1990)).

For more than ninety years, Michigan law has set forth four elements of a novation: "(1) parties capable of contracting; (2) a valid obligation to be displaced; (3) the consent of all parties to the substitution based upon sufficient consideration; (4) the extinction of the old obligation and the creation of a valid new one." *Macklin v. Brown*, 314 N.W.2d 538, 540 (Mich. Ct. App. 1981) (citing *In re Dunneback's Estate*, 4 N.W.2d 472, 474 (Mich. 1942), and others). "All of these elements must be established by the evidence; not necessarily by direct evidence, but by evidence of such facts and circumstances [surrounding the transactions] as logically leads one to the conclusion that a new contract has been made." *Harrington-Wiard Co. v. Blomstrom Mfg. Co.*, 131 N.W. 559, 561 (Mich. 1911). Imperial argues that the evidence before the district court did not establish, as a matter of law, the third and fourth elements.

"[A]ssumption of liability is not novation, unless there concur the consent of the one party to accept the substitute in lieu of the other party to the original contract, and a discharge of the latter. There must be consent by the creditor to take the

new debtor as his sole security and to extinguish the claim against the former. Such consent is not to be implied merely from the performance of the contract by the substitute, for that might well consist with the continued liability of the original . . . ." *Harrington-Wiard Co.*, 131 N.W. at 564-65 (quoting *Illinois Car & Equip. Co. v. Linstroth Wagon Co.*, 112 F. 737, 740 (7th Cir. 1902) (citing *Butterfield v. Hartshorn*, 7 N. H. 345 (1834))); *see also Fender v. Feighner*, 251 N.W. 536, 538 (Mich. 1933) (quoting same cases). The circumstances surrounding a series of transactions may be considered, in addition to the text of any written instruments, in determining whether the parties reached a novation that extinguished the liability of one debtor and substituted for it the liability of another. However, a third party's payment accepted by a creditor does not, without more, establish a novation. *See Hutchings v. Securities Exch. Corp.*, 284 N.W. 614, 617 (Mich. 1939); *Gorman v. Butzel*, 262 N.W. 302, 304 (Mich. 1935).

The Purchase Agreement and the Debt Assumption Agreement are contracts between Jay Ambe Corp. and Dore Development, to which neither Imperial nor Mainstream became parties. Mainstream relies on the written "consent" Imperial supposedly gave to Dore Development's proposal to pay off the overdue debt owed to Imperial under the Mainstream Note, *i.e.*, the fax from Imperial's controller to Dore Development's attorney. In that fax, Imperial stated that it "would consent to assumption of this note," provided Dore brought it current. Mainstream argues that this transmission constituted an offer of novation that Dore Development accepted when it brought the Khatiwala portion of the Mainstream Note current as of the November 20th closing. To further support its contention, Mainstream points to language in the Debt Assumption Agreement, "Creditor [Ambe] consents to Debtor's [Dore Development's] assumption of said [Mainstream] Note," from which it *infers* Ambe's and *Imperial*'s consent to release Mainstream. Mainstream also notes that, for six years following the Debt Assumption Agreement, Dore Development directly paid and Imperial accepted installments on the Khatiwala portion of

the Mainstream Note. Finally, Imperial took no actions between November 20, 1990, and the filing of the instant lawsuit that recognized or asserted a continuing obligation by Mainstream.

Imperial stresses that nothing in the fax (or anything else, for that matter) indicated any intention on Imperial's part to *release* Mainstream from its obligation under the Mainstream Note, and it does not appear that Mainstream ever asked to be released. Moreover, Imperial points out that nothing in the record even remotely suggests that Mainstream consented *at the time* to Imperial's supposed release of Mainstream and substitution of Dore Development. *See Keppen v. Rice*, 241 N.W. 156, 157 (Mich. 1932) ("Consent of all the parties to the novation is necessary, but need not be expressed in writing. It is sufficient if it appears from the facts and circumstances surrounding the transaction.").

From these two versions of the facts, Imperial argues that nothing supports the district court's conclusion that it released Mainstream. Of course, this is a position Mainstream describes as "clearly incorrect," insofar as Imperial consented to Dore Development's assumption of the Khatiwala Note obligation. At this stage of litigation, both parties draw extravagant conclusions from an ambiguous record. Although one side may be drawing inferences consistent with the actual intent of the parties, a trier of fact must ultimately decide that question. Because the district court did not draw all inferences from the undisputed facts in favor of the non-moving party, it effectively made findings of fact on a question Michigan law generally reserves to factfinders. Accordingly, the court erred in holding that a novation releasing Mainstream occurred when Imperial offered to consent to Dore Development's assumption of the Khatiwala Note obligation.

As Imperial points out, nothing in the fax transmission indicated any intention to release Mainstream. The word "assumption," directed to Dore Development, does not by itself indicate an intention by Imperial to release Mainstream