## CHENE v. CITY OF DETROIT.*

1. DEDICATION—COMMON-LAW DEDICATION.
   Dedication under statute is not necessary where facts are sufficient to establish dedication at common law.

2. SAME—WHAT CONSTITUTES COMMON-LAW DEDICATION.
   To create common-law dedication there must be intention on part of owner to dedicate lands to public use, and acceptance of such dedication by public authorities.

3. SAME—ACCEPTANCE—USER.
   Acceptance of dedication may be evidenced either by express declaration or by acts of user indicating intention to accept such property for public use or purpose to which owner has by declaration or acts set it apart.

---

* For opinion on rehearing, see 263 Mich. 512.

4. Same—Intention—User—Acceptance.
    In suit to compel removal of obstructions from street, evidence *held*, sufficient to establish intention on part of owners to dedicate street for public use and its acceptance by user, constituting common-law dedication.

5. Municipal Corporations—Highways and Streets—Vacating Street—Statutes.
    Use of street for 10 years or more constitutes public highway (1 Comp. Laws 1929, § 3936), which abutting property owners or public authorities may not close, except in manner authorized by law.

6. Same—Vacating Street—Review by Court—City Charter.
    Whether city was justified in closing part of street is not subject to review in suit to compel removal of obstruction from street, where it appears that said action was taken under city charter and in accordance with law.

Appeal from Oakland; Gillespie (Glenn C.), J. Submitted January 12, 1933. (Docket No. 128, Calendar No. 36,990.) Decided March 2, 1933. Rehearing granted April 21, 1933.

Bill by Rose Allen Chene and others against City of Detroit, a municipal corporation, and others to compel removal of obstructions to a street and for nullification of street vacation proceedings. Decree for plaintiffs as to defendants City of Detroit and Zoological Park Commission, and bill dismissed as to City of Royal Oak. Defendants City of Detroit and Zoological Park Commission appeal. Affirmed.

*Frank B. Ferguson,* for plaintiffs.

*Clarence E. Wilcox* and *James R. Walsh* (*Howard F. Cline,* of counsel), for defendants.

Sharpe, J. The opinion filed by the trial judge so clearly states the facts in this case, and the law applicable thereto, that we adopt it as our own. It follows:

"Plaintiffs, owners of property in the Huntington Woods subdivision in the township of Royal Oak, filed this bill to compel the city of Detroit and the

zoological park commission to remove a fence erected in the middle of Huntington road. Plaintiffs also pray that certain proceedings taken by the city of Royal Oak to vacate a portion of the street be decreed null and void. The facts out of which the controversy arose are substantially as follows:

"In the spring of 1916 Charles W. Burton purchased 355.58 acres of land in Royal Oak township, under an agreement with one Follett, then manager of the Detroit zoological society, whose authority to act for and bind the society is conceded, that the south 100 acres would be deeded to the society and each would give a strip of land 30 feet wide along the boundary for the purpose of establishing a 60-foot highway. On April 28, 1916, Burton conveyed the 100-acre parcel to the zoological society, and within a short time thereafter conveyed the remainder to the Huntington Woods Company, of which he was president, and in which Follett was a stockholder and a director. The company thereupon caused the property to be platted as the Huntington Woods subdivision, and gave a bond to the township conditioned that it would improve the streets and build the sidewalks shown on the plat within a period of three years and the plat was thereupon duly accepted by the public authorities.

"Under the agreement between Follett and the Huntington Woods Company, a 60-foot street was laid out between the two properties known as Huntington road, commencing at Woodward avenue, and running in a westerly direction. The north 30 feet of the road was dedicated on the plat as a public street, but the south 30 feet, which was on the property theretofore deeded to the Detroit zoological society, was not dedicated. The society however erected a high, woven wire fence, attached to iron posts imbedded in concrete, set back 30 feet south of the center of the road as laid out on the plat, but never entered into any formal dedication of such land as a public highway, although there is no doubt

each party intended to set aside a 30-foot strip of land, making a 60-foot street some 4,400 feet long between the two properties. At the intersection of Ludlow street, where Huntington road leaves the property of the zoological society, the street is shown on the plat as having a width of 60 feet, which conforms to the width of the remainder of the streets.

"Both parties participated in the work and expense of grading and improving the street, and, some time during the year 1917 or 1918, in paving a 24-foot strip in the center with a hard surface material known as rubber stone. Several blocks west from what is now Woodward avenue, the street traversed a low, marshy strip of land, and during times of wet weather it was impassable, but this condition was remedied by the construction of a county drain some time about 1925. Before the construction of the drain automobiles frequently became mired in this portion of the street when attempting to cross the low ground. The street was used more or less by the public from the time the plat was recorded, and was extensively used by the authorities of the zoological park after title to the zoological park property was conveyed to the city of Detroit in 1923.

"Subsequent to 1921 there are many acts on the part of municipal authorities showing that the road was regarded as a public highway. From 1921 until the village of Huntington Woods was incorporated in 1926, taxes were levied by the township of Royal Oak upon the property in the subdivision for road repair purposes, and road work was performed by the township upon all of the roads in the subdivision. During the years 1925 to 1929 the city of Royal Oak performed work on the street. The village of Huntington Woods also performed work on the street at intervals between 1926 and 1929, plowed snow in the winter and placed calcium chloride, paid for by the zoological park commission, on the street in the summer with city equipment, and cut weeds and assumed to regulate traffic and parking thereon.

"When the zoological park was opened in the summer of 1928, the traffic on the road increased to such an extent that it was difficult for residents even to cross the street. Traffic officers of the village of Huntington Woods and the city of Royal Oak were stationed along the street and a plan was advanced to make it a one-way street towards Woodward avenue. To facilitate parking, the Detroit zoological park commission caused a strip of crushed stone to be spread immediately north of its fence and south of the improved portion of the road, erected a plank barrier to prevent cars from being driven into the fence, and placed parking signs at intervals instrucing drivers to park their cars on the crushed stone.

"Traffic conditions thereafter became so bad that petitions were filed with the authorities of the city of Royal Oak and the village of Huntington Woods in the summer of 1928. In the fall of 1928 barriers were erected at each end of the road by the village of Huntington Woods. In the summer of 1929 the city of Royal Oak took proceedings to vacate the north 30 feet of the street for a distance of several blocks west from Woodward avenue, being all that portion of the platted street within the city limits. The Detroit zoological park commission in the spring of 1929 moved its fence north a distance of 30 feet, along its entire north line, so the fence now incloses the south half of the 24-foot strip of stone or macadam pavement. As a result of these actions the entire 60 feet of the former road for a distance of several blocks west of Woodward avenue is closed, and, for the remainder of the distance, only the former north half of the road, which includes only 12 feet of the former hard surface of the road, is open to use.

"After the property was platted many lots were sold and a number of pretentious homes erected, several of which front on Huntington road. The plats of the property which were shown to prospective purchasers show all roads upon the subdivision, including Huntington road, to be 60 feet wide. The

road was formerly a direct outlet to Woodward avenue for residents on the street, who are now obliged to detour through back roads, causing in some instances extra travel of approximately one-half mile.

"In my judgment there are at least two reasons why this court must hold that the city of Detroit had no right to obstruct a street of which the public had had the uninterrupted use for upwards of 14 years.

"1. The facts constitute a common-law dedication.

"It is unnecessary to refer to the many cases in which this question has been discussed, as the rule is well settled that a dedication under the statute is not necessary where the facts are sufficient to establish a dedication at common law. In order to create a common-law dedication, there must be, first, an intention on the part of the owner to dedicate lands or premises to a public use; and, second, such dedication must be accepted by the public authorities. The acceptance may be evidenced either by express declaration or by acts of user indicating an intention to accept such property for the public use or purpose to which the owner has by his declarations or acts set it apart.

"It appears from the foregoing statement of facts all of the elements necessary to constitute a common-law dedication are present. By mutual agreement between the owners of the abutting property, a 60-foot street was laid out, one-half of which was formally dedicated as a part of the Huntington Woods subdivision. As laid out, it formed the principal outlet to Woodward avenue for all of the lots in the southern portion of the subdivision. The zoological society erected a permanent fence along the south line, leaving a strip of land 60 feet wide which conformed to the platted property on the north. The street was graded and a strip in the center 24 feet wide paved. Trees were set out along the street line and sidewalks built along one side,

Lot lines and the lines of intersecting streets were fixed in accordance with the street lines. Surely in the face of this testimony, which is undisputed, it cannot be said there was no intention on the part of both the Huntington Woods Company and the Detroit zoological society to dedicate the street to public use.

"The evidence of acceptance by user is equally convincing. The street was in use by the public almost from the time it was laid out. It is true that prior to 1925, during the wet seasons of the year, a small section was in bad condition, and automobiles frequently became mired when attempting to use it, but it was in use nevertheless as a public thoroughfare. Taxes were assessed upon property in the road assessment district in which the street was located for the improvement of the street, and work was done upon it by the public authorities. Not only was road work done upon the street, but the public authorities placed calcium chloride upon it on occasions, cut weeds and removed snow therefrom during the winter. The street was patrolled by municipal authorities, who regulated traffic and parking thereon in the same manner as other streets in the subdivision. Until acute traffic problems were presented, through excessive use of the street by the public, it does not appear to have occurred to anyone that it was not open to public use.

"2. Use of the street for 10 years or more constitutes a public highway.

"The statute provides:

" 'All highways * * * that shall have been used as such for ten years or more, whether any record or other proof exists that they were ever established as highways or not, and all roads which have been or which may hereafter be laid out and not recorded, and which shall have been used eight years or more, shall be deemed public highways.' 1 Comp. Laws 1929, § 3936.

"Here the road had been laid out, its boundaries plainly indicated, and a 24-foot pavement built in the center, which had been used by the public for more than 10 years. The statute clearly prevents

the abutting property owners or the public authorities from now closing the street except in the manner authorized by law.

"I have examined the files in the Wayne circuit court, where certain purchasers of lots brought suit against the Huntington Woods Company for rescission of their contracts on the ground that at the time of sale it was represented that Huntington road was a public street. The cases were heard by Judge Lamb, who came to the conclusion that the street was a public street, and dismissed the bills of complaint. While it is true his conclusions would not be binding in this action, the fact that another court has entered such a decree is at least entitled to respectful consideration.

"So far as the action taken by the city of Royal Oak to close the north half of the street for several blocks from Woodward avenue is concerned, its action appears to have been strictly in accordance with the city charter. Whether such action was justified is not a question for this court. So long as it appears that the public authorities acted in accordance with law, their actions are not subject to review by this court.

"A decree will be entered in accordance with the foregoing, restraining the defendants city of Detroit and the zoological park commission from blocking or obstructing the southerly 30 feet of Huntington drive as it existed prior to 1929. The bill will be dismissed as to defendant city of Royal Oak, without costs. Plaintiffs will recover taxable costs against the remaining defendants."

The decree entered pursuant thereto is affirmed, with costs to appellees.

McDONALD, C. J., and CLARK, POTTER, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.