PERRY DRUG STORES, INC.,
a Michigan corporation,
Plaintiff,

v.

CSKG, INC., a Delaware corporation,
and NP Holding Corp., a Delaware
corporation, Defendants.

No. 98–71782.

United States District Court,
E.D. Michigan,
Southern Division.

Feb. 4, 2000.

Craig L. John, Andrew W. Mayoras, Dykema Gossett, Bloomfield Hills, MI, for Plaintiff.

Todd R. Mendel, Barris, Sott, Denn & Driker, Detroit, MI, for Defendants.

## OPINION AND ORDER GRANTING DEFENDANT CSKG, INC.'S MOTION FOR SUMMARY JUDGMENT

FEIKENS, District Judge.

### I. INTRODUCTION

This suit arises from the alleged breach of a contract of indemnification between defendant CSKG, Inc., (CSKG) and plaintiff Perry Drug Stores, Inc. (Perry). In an earlier opinion, I dismissed former defendant CSKG Auto, Inc., a parent corporation of CSKG, for lack of personal jurisdiction. *See* Opinion and Order of May 6, 1999. Because the two remaining defendants in this case are both dissolved Dela-

ware corporations with no current assets, I ordered the case dismissed unless Perry informed me of its continued intention to proceed in this lawsuit. Perry did inform me of its intent to proceed. It has been necessary, therefore, to receive further argument and briefing as to defendant CSKG's motion for summary judgment, left unresolved by my previous opinion. *See* Opinion and Order of May 6, 1999, p. 3 fn. 1. For the reasons that follow, CSKG's motion for summary judgment is now granted.

## II. BACKGROUND

Much of the background in this case is contained in my May 6, 1999 order and need not be repeated here. For the present purpose, it is sufficient to note the following:

Perry was a Michigan corporation in the retail pharmaceutical business. Prior to 1988, Perry owned a series of subsidiaries (referred to as the "Auto Works Division") that operated auto supply retail stores in the Midwest. On January 22, 1988, Perry entered into a purchase agreement with defendant CSKG, then known as Northern Retail Corporation, for the sale of its Auto Works Division. Relevant to Perry's claim for indemnification, the purchase agreement contained two clauses. First, the agreement stated:

> *Assumption of Liabilities.* At the Closing, the Purchaser [CSKG] will execute and deliver to Perry an instrument or instruments in the form reasonably satisfactory to Purchaser pursuant to which Purchaser will agree to assume and pay or discharge all liabilities and obligations of Perry relating to the operations of the Auto Works Division which (i) are reflected in the Closing Balance Sheet or (ii) are related to the executory contracts and leases to be assigned by Perry to and assumed by Purchaser as set forth in the Disclosure Schedule.

Purchase Agreement dated January 22, 1988, p. 3 ¶ 2(b) (hereinafter "Purchase Agreement"). Second, the agreement stated:

> *[Indemnification] By Purchaser.* Purchaser hereby indemnifies and agrees to hold Perry harmless from and against any and all liabilities, losses, damages, costs and expenses, including reasonable attorneys fees, incurred or sustained by Perry resulting from (i) any inaccuracy in, or breach or violation of, the representations, warranties and covenants made by Purchaser herein, or (ii) any and all claims asserted against Perry which relate to the properties or operations of the Auto Works Division, regardless of the basis for such claims or whether Perry knew or had reason to know of any such claim or the basis of any such claim on the date thereof. The indemnification by Purchaser provided for herein shall not extend to those liabilities for which Perry has agreed to indemnify Purchaser.

Purchase Agreement, p. 35 ¶ 10(b).

Two other aspects of the purchase agreement must also be noted. The agreement contained an assignment provision that read:

> *Assignment* . . . . [N]either this Agreement nor any of the rights, interests or obligations hereunder shall be assigned by either of the parties hereto without the prior written consent of the other party, *other than to an affiliate of the Purchaser.*

Purchase Agreement, p. 42–3 ¶ 17(d) (emphasis added). The agreement also contained a guarantee clause signed by defendant NP Holdings Corporation, then known as Northern Pacific Corporation, CSKG's parent corporation.

Prior to the closing of the purchase of the Auto Works Division, CSKG created a wholly owned subsidiary, Auto Works Holdings, Inc. (Auto Works) and assigned to Auto Works "all of the right title and interest" CSKG possessed in the purchase agreement with Perry. *See* Assignment and Assumption Agreement dated February 26, 1988, p. 1 ¶ 1. In return, Auto

Works assumed "all of the obligations of [CSKG] in, to and under the Purchase Agreement". *Id.*, ¶ 2.

On February 29, 1988, Perry closed the sale of the Auto Works Division. Significantly, however, Perry *did not* close the sale with CSKG—it closed the sale with Auto Works. *See* General Assignment and Assumption of Liabilities dated February 29, 1988. The third paragraph of the closing document stated:

> The Purchase Agreement requires that Purchaser, *or its permitted assignee*, undertake to assume and to agree to pay or discharge certain liabilities and obligations of Perry relating to the operations of the Auto Works Division.

*See* General Assignment and Assumption of Liabilities dated February 29, 1988, p. 1 (emphasis added). Pursuant to this formulation of the requirements of the purchase agreement, *Auto Works* signed the closing document, containing provisions in which *Auto Works* agreed to assume and pay or discharge the liabilities and obligations of Perry relating to the operations of the Auto Works Division and in which *Auto Works* agreed to indemnify Perry for its failure to perform its obligations.

On that same day, NP Holdings, in a signed letter, affirmed its guarantee of the "full and complete performance by [CSKG] and [Auto Works], as the case may be. . . ." *See* Letter of Northern Pacific Corporation, now known as NP Holdings, dated February 29, 1988, attached as Exhibit D to the Affidavit of Barry Brett.

After the closing, the parties continued to undertake the requirements of the purchase agreement including preparation of a closing balance sheet. In late 1989, in an effort to "narrow the scope of the differences" concerning the closing balance sheet and to "provide for additional time for the parties to resolve such differences," *see* First Amendment to Purchase Agreement dated December 14, 1989, Auto Works and Perry, but *not* CSKG, signed

an amendment to the purchase agreement altering their responsibilities under the purchase agreement. The amendment recited that Auto Works "did assume all of the obligations of [CSKG] under the Purchase Agreement." *Id.* It should also be noted that NP Holdings, but *not* CSKG, signed a separate consent to the amendment of the purchase agreement. *Id.*

The amendment to the purchase agreement did not resolve the parties' dispute, and in 1991, Perry filed an action for declaratory judgment, requesting that this court determine the propriety of Perry's proposed closing balance sheet and rule that objections raised by Auto Works and CSKG were contrary to the purchase agreement. Both CSKG and Auto Works were named as defendants in the declaratory action. CSKG and Auto Works filed an answer to the declaratory judgment and a counterclaim. The case was eventually settled in a document signed by Perry, Auto Works and CSKG. *See* Release and Settlement Agreement dated January 21, 1992.

Sometime thereafter, the parties completed all of the requirements of the purchase agreement. Several years later, however, and after several further transfers of the Auto Works Division,[1] defendants allegedly began failing to satisfy their obligations under the purchase agreement and/or the closing document to reimburse or otherwise indemnify Perry for its continuing obligations related to the operation of the Auto Works Division. This lawsuit resulted.

Relevant to this opinion, defendant CSKG filed a motion for summary judgment, contending first that the indemnity obligation set forth in paragraph 10(b) of the purchase agreement did not attach until closing—at which time the obligation was in fact undertaken by Auto Works rather than CSKG—and second, that the assignment of its rights and obligations under the purchase agreement to Auto

---

1. *See* Opinion and Order dated May 6, 1999,  pp. 2–3.

Works constituted a release or novation of its obligations to Perry. Plaintiff has responded by submitting that the purchase agreement is an enforceable contract and that it did not intend the assignment of the purchase agreement to Auto Works to function as a novation as to CSKG.

## III. SUMMARY JUDGMENT STANDARD

Courts properly grant summary judgment when the moving party establishes through pleadings, depositions, answers to interrogatories, admissions, and affidavits that "there is no genuine issue as to any material fact, and that the moving party is entitled to a judgment as a matter of law." *Mauro v. Borgess Medical Center,* 137 F.3d 398, 401 (6th Cir.1998), quoting Federal Rule of Civil Procedure 56(c). Under Rule 56(c), a defendant bears an initial burden of demonstrating that an essential element of the non-moving party's case is lacking. *Kalamazoo River Study Group v. Rockwell Int'l Corp.,* 171 F.3d 1065, 1068 (6th Cir.1999) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). The nonmoving party must then show that there is in fact a genuine issue for trial, *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), and must identify specific facts, supported by evidence. *Lujan v. Defenders of Wildlife,* 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992); *Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505. In deciding a motion for summary judgment, the court must view the factual evidence in a light most favorable to the nonmoving party. *Mount Elliott Cemetery Ass'n. v. City of Troy,* 171 F.3d 398, 402–3 (6th Cir.1999) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–88, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

## IV. DISCUSSION

### A. The Executory Nature of the 1988 Purchase Agreement

■ CSKG's first argument in favor of summary judgment is that the indemnity provisions of the purchase agreement did not attach until closing. Because Perry closed with Auto Works rather than CSKG, defendant reasons, CSKG's indemnity obligation never attached, and is not now enforceable against CSKG. I agree.

■ Purchase agreements are by nature executory. *See, e.g., In re Becknell & Crace Coal Co., Inc.,* 761 F.2d 319, 321–22 (6th Cir.1985) (noting the executory nature of purchase agreements in the context of an inquiry under 11 U.S.C. § 110). Notwithstanding the language of the purchase agreement, stated in the present tense, that "Purchaser hereby indemnifies and agrees to hold Perry harmless from and against any and all liabilities…", Purchase Agreement, p. 35 ¶ 10(b), Perry cannot reasonably contend that this obligation was enforceable against CSKG until such time as the Auto Works Division was actually transferred into CSKG's possession. Indeed, ¶ 2(b) of the purchase agreement expressly contemplated that CSKG's assumption of liabilities and obligations would be accomplished through the execution of an instrument *at closing.* Further, until closing, Perry was expressly required to continue to operate the Auto Works Division in conformity with its ordinary course of business, *see* Purchase Agreement, p. 21–22 ¶ 7(a), and arguably would have been required to indemnify CSKG for any failure to do so. *See* Purchase Agreement, p. 34–35 ¶ 10(a).

Clearly, then, CSKG's indemnity obligations would not have attached until closing. When, just prior to closing, Perry agreed to close the deal and complete the sale with Auto Works rather than CSKG, Auto Works became liable for the indemnity provision; the closing document between Perry and Auto Works contains such an indemnity provision. No comparable closing document between Perry and CSKG exists.

In response, Perry notes that the purchase agreement was a binding, enforce-

able contract and that ¶ 10(b) of the purchase agreement is enforceable against CSKG irrespective of the purchase agreement. While it is true that the provisions of the purchase agreement are enforceable,[2] the purchase agreement cannot be read without reference to the fact that Perry agreed to close with Auto Works rather than CSKG. Notwithstanding the provisions of the purchase agreement, specifically ¶ 2(b), Perry agreed to accept Auto Works' assumption of liability and to transfer the Auto Works Division to Auto Works rather than require an assumption on the part of CSKG.[3] The natural condition precedent of CSKG's contractual duty to indemnify—transfer of the Auto Works Division to CSKG—never occurred.

## B. Novation

In the alternative, assuming that CSKG's obligation to indemnify would have attached at the signing of the purchase agreement rather than at the closing on February 29, 1988, summary judgment is also warranted on the theory of novation.

■ The following four elements are necessary to establish novation under Michigan law:[4]

(1) parties capable of contracting;

(2) a valid prior obligation to be displaced;

(3) the consent of all the parties to the substitution based upon sufficient consideration;

(4) the extinction of the old obligation and the creation of a valid new one.

*Leila Hosp. and Health Center v. Xonics Medical Systems, Inc.*, 948 F.2d 271, 274

(6th Cir.1991) (citing *Harrington–Wiard Co. v. Blomstrom Manufacturing Co.*, 166 Mich. 276, 131 N.W. 559 (1911)); *Devitt v. Quirk*, 105 Mich.App. 94, 306 N.W.2d 405 (1981). Neither party disputes elements (1) or (2). Perry contends, however, that it did not consent to the substitution of Auto Works for CSKG (element (3)) and that it did not intend that the closing with Auto Works rather than CSKG would extinguish CSKG's obligations under the purchase agreement (element (4)).

■ The question whether a novation exists "rests in the intention of the parties as it may be gathered from the surrounding and subsequent circumstances and conduct." *Gorman v. Butzel*, 272 Mich. 525, 529, 262 N.W. 302 (1935). Consent of the parties to effect a novation need not be expressly stated in writing. *Keppen v. Rice*, 257 Mich. 299, 241 N.W. 156 (1932).

■ In this case, notwithstanding the fact that Perry entered into a purchase agreement with CSKG, Perry closed the sale of the Auto Works Division with Auto Works. Both NP Holdings and Auto Works executed closing documents stating their respective obligations to guarantee performance of the contract and indemnify Perry in the event of non-performance. CSKG did not execute such a document. In the First Amendment to Purchase Agreement, Perry and Auto Works signed the amendment to the purchase agreement. CSKG did not. This is "quite persuasive[ ]" evidence that CSKG's rights and obligations under the purchase agreement had been released. *Gorman*, 272 Mich. at 529, 262 N.W. 302 (finding that "intention to cause a novation is quite per-

2. For instance, provisions such as Perry's obligation to prepare a closing balance sheet, *see* Purchase Agreement, p. 5 ¶ 4, the parties' obligations to use reasonable efforts to complete the closing, *id.*, p. 7 ¶ 4(c), and, indeed, CSKG's obligation to assume the obligations and liabilities of the Auto Works Division, *id.*, p. 3 ¶ 2(b), were all enforceable.

3. Indeed, the closing document modified the requirement of ¶ 2(b) of the purchase agree- ment, stating that the purchase agreement required an assumption of liabilities from CSKG *or* Auto Works. It follows that when Auto Works assumed the liabilities of the Auto Works Division, it also assumed the indemnity obligation.

4. The parties agree that pursuant to a choice of law provision in the purchase agreement, Michigan law applies to this cause of action.

suasively shown by the language in [a subsequent agreement], which ignores [the assignor] and treats the contract as between the [assignee and the seller]").[5]  *Id.* Furthermore, in the First Amendment to Purchase Agreement, Perry acknowledged that Auto Works "did assume all of the obligations of [CSKG] under the Purchase Agreement."  While it is of course true that an assignment does not, in and of itself, function as a novation, *see Greenbrier Homes v. Cook,* 1 Mich.App. 326, 136 N.W.2d 27, 29 (1965) (citing *Barnard v. Huff* 252 Mich. 258, 233 N.W. 213 (1930)), Perry's acknowledgment that Auto Works did assume all of the obligations of CSKG, coupled with the other evidence above, compels the conclusion that Perry had consented to the substitution of Auto Works for CSKG in the performance of the purchase agreement, including the indemnity provision.

In response, Perry raises several points.  First, Perry submits the affidavit of Barry Brett, counsel for Perry at the time of the signing of the purchase agreement.  That affidavit states that "It was never intended by Perry that [CSKG] would be released from any of its obligations under the Purchase Agreement."  *See* Plaintiff's Supplemental Brief on Preclusion and Related Issues, Ex. A, ¶ 27.  Given the unequivocal nature of Perry's actions in and around 1988 and 1989, however, Brett's self-serving affidavit filed approximately 10 years after the events in question cannot create a triable issue of fact as to Perry's intent.

Second, Perry contends that correspondence between CSKG and Perry regarding the purchase agreement suggests that CSKG understood that CSKG remained obligated under the purchase agreement.  For instance, the letter of February 29, 1988 from NP Holdings (then Northern Pacific Corp.) to Perry affirming its guarantee obligation stated:

> [NP Holdings] does hereby guarantee the full and complete performance by [CSKG] and Holdings, *as the case may be,* of any and all of their respective obligations under the Purchase Agreement. . . .
>
> . . . .
>
> [NP Holdings] does hereby agree to use its best efforts to cause [CSKG] and Holdings to fulfill their respective obligations, *if any,* under the Purchase Agreement.

(Emphasis added).  Particular attention to the highlighted phrases, however, reveals that this letter does not state whether CSKG in fact remained obligated by the purchase agreement.

Similarly, Perry contends that an opinion letter from an attorney for NP Holdings dated February 29, 1988, *see* Plaintiff's Supplemental Brief on Novation, Ex. G, and the language of the consent executed by HP Holdings in connection with the First Amendment to Purchase Agreement, evinces the intent of the parties for CSKG to remain liable under the indemnity obligation of the purchase agreement.  The letter states, in relevant part:

> The execution and delivery of the Purchase Agreement and the performance by [CSKG] of its obligations thereunder, *as modified by the Assignment Agreement,* will not violate . . . any provision of the . . . By–Laws of [CSKG].

*Id.* (emphasis added).  The language of the consent executed by HP Holdings states:

> [HP Holdings] . . . agrees that such amendment [to the purchase agreement], *to the extent that it alters or modifies the obligations of the Purchaser* (as defined in the Purchase Agreement), shall not act to release or diminish the obligations of [NP Holdings] as

---

**5.**  The fact that Perry did not require that CSKG sign or consent to the amendment of the purchase agreement is even more persuasive of Perry's consent to substitute Auto Works for CSKG, given the fact that Perry did receive consent to the amendment from HP Holdings, the guarantor.  Certainly, had Perry at that time understood the rights and obligations of the purchase agreement to be CSKG's rather than Auto Works', Perry would have requested that CSKG rather than Auto Works sign the amendment.

the guarantor of the Purchaser's obligations under the Purchase Agreement. (Emphasis added).[6] Again, attention to the highlighted language of these passages reveals that they do not evince a continuing indemnity obligation on the part of CSKG. In each instance, the language cited by Perry suggests only that obligations of CSKG *might* exist; the language does not state that such obligations *do* exist. Such equivocal references are not sufficient to overcome the clear import of Perry's actions in closing the sale of the Auto Works Division and in obtaining amendment of the purchase agreement from Auto Works, not CSKG.

Third, Perry appears to contend that in its closing document with Auto Works, Perry did not in fact assign to Auto Works all of the rights contemplated in the purchase agreement or acquire from Auto Works all of the assumptions required in the purchase agreement. In so arguing, however, Perry ignores the fact that the General Assignment and Assumption of Liabilities between Auto Works and Perry is the only document in the record that transfers the tangible and intangible assets of the Auto Works Division pursuant to the purchase agreement; it is also the only document in the record in which Perry acquires the assumptions of obligations set forth in the purchase agreement. Furthermore, Perry's position is clearly untenable given the text of the First Amendment to Purchase Agreement, signed by Perry, stating that Auto Works "did assume all of the obligations of [CSKG] under the Purchase Agreement." Perry cannot now be heard to suggest otherwise.

Finally, Perry contends that certain actions of CSKG, namely its objections to the closing balance sheet prepared by Perry, its defense of Perry's 1991 lawsuit[7] seeking a declaratory judgment under the purchase agreement, and its settlement of that lawsuit, suggest that neither party intended to release CSKG from the purchase agreement. While it is true that CSKG did continue to correspond with

---

**6.** This passage of the consent of HP Holdings to the First Amendment to Purchase Agreement gives rise to another argument by Perry. Perry argues that this language—recognizing the Purchase "as defined in the Purchase Agreement"—renders *Gorman, supra,* inapplicable because the parties did not "ignore" CSKG in the amendment to the purchase agreement. In fact, however, the parties did "treat[] the contract as between" Perry and Auto Works when the purchase agreement was amended without the consent of CSKG. *Gorman,* 272 Mich. at 529, 262 N.W. 302.

**7.** Perry raises an additional argument as to the 1991 lawsuit, arguing that because CSKG defended the 1991 declaratory action without raising novation as a defense to its inclusion as a party defendant, it is now precluded from raising novation as a defense in this case. In making this argument, however, Perry ignores the fact that actions for declaratory judgment do not generally have preclusive effect outside of the issues actually litigated. *See* Restatement (Second) of Judgments § 33 (1982).

> A declaratory action is intended to provide a remedy that is simpler and less harsh than coercive relief, if it appears that a declaration might terminate the potential

controversy. This idea that declaratory actions are to supplement rather than to supersede other types of litigation is fortified by the provisions of the Uniform and Federal Acts for "further relief" when necessary or proper; these provisions represent a legislative scheme antithetical to merger.

... [A] declaratory action determines only what it actually decides and does not have a claim preclusive effect on other contentions that might have been advanced. That approach is also applicable with respect to a counterclaim by a defendant that, in any other type of action, would be barred by § 22.

*Id.,* comment c. The United States Court of Appeals for the Sixth Circuit has approved the reasoning of § 33 in *BGB Pet Supply, Inc. v. Nutro Products, Inc.,* 124 F.3d 196, 1997 WL 476519 (6th Cir.1997) (unpublished).

The rationale of § 33 is particularly acute in the present case. In the 1991 declaratory judgment, Perry sought to have this court rule that CSKG's objections under the purchase agreement were invalid. If that dispute was to be resolved, CSKG clearly could not simply have argued that it was no longer obligated under the purchase agreement. The issue of indemnity obligations was not at all relevant to the 1991 case, and would not have been raised by either party.

Perry regarding Perry's obligations under the purchase agreement and did file an answer in the 1991 declaratory judgment action, these facts do not alter the intent of the parties as evinced in contractual documents signed by Perry and Auto Works, but not CSKG. Given these contractual documents, CSKG's behavior can be seen as little more than imprecision on the part of the parties.

In short, Perry's counter arguments fail to create a genuine issue of material fact as to the parties' intent to substitute Auto Works' indemnity obligation for that of CSKG. The import of the contractual documents is clear.

## V. CONCLUSION

For the foregoing reasons, CSKG is entitled to summary judgment as to the contractual indemnification claim. Summary judgment is also granted as to Perry's state tort claims for unjust enrichment, common law indemnity, breach of an implied contract to indemnify, as the duty of CSKG alleged in each of these counts is derivative of Perry's contractual claim. CSKG is dismissed from this case with prejudice.

**IT IS SO ORDERED.**