**PERRY DRUG STORES,**
Plaintiff–Appellee,

v.

**CSK AUTO CORPORATION, et al., Defendants–Appellants.**

Nos. 01–1498, 01–1547.

United States Court of Appeals,
Sixth Circuit.

Dec. 8, 2003.

Mark H. Sutton, Craig L. John, Christopher S. Olson, Dykema Gossett, Bloomfield Hills, MI, for Plaintiff–Appellant Cross–Appellee.

Eugene Driker, Todd R. Mendel, Barris, Sott, Denn & Driker, Detroit, MI, Barry J. Brett, Jenkens, Gilchrist, Parker & Chapin, New York, NY, for Defendants–Appellees.

Before: SILER and DAUGHTREY, Circuit Judges, and ALDRICH, District Judge.*

ALDRICH, Judge.

This is an appeal from the district court's orders (1) granting in part appellees' motion to dismiss for lack of personal jurisdiction; (2) granting appellees' motion for summary judgment on the issue of novation; and (3) assigning damages of $1.00. Plaintiff-appellant and cross-appellee, Perry Drug Stores, brought suit against the defendants-appellees and cross–appellants–CSK Auto Corporation, CSKG, Inc., and NP Holding Corporation–for the enforcement of an indemnification provision. The indemnification provision in question is part of a Purchase Agreement, under which Perry Drug Stores sold a chain of auto parts stores to Auto Works Holding, Inc., a subsidiary of CSKG, Inc. The district court, in a series of four orders: (1) granted the defendants' motion to dismiss solely as to CSK Auto Corporation, dismissing CSK Auto Corporation; (2) granted CSKG, Inc.'s motion for summary judgment as to the issue of indemnity, dismissing CSKG, Inc.; (3) granted Perry Drug Stores' motion for summary judgment on the issue of NP Holding Corporation's liability, retaining NP Holding Corporation as the sole defendant; and (4) granted judgment against NP Holding Corporation in the amount of only $1.00.

## A. Facts

The indemnification provision in question is part of a January 22, 1988 Purchase Agreement, under which Perry Drug Stores (Perry) sold its Auto Works Division (a chain of auto parts stores either owned or leased by Perry) to Northern Retail Corporation (Northern Retail), now defendant CSKG, Inc. (CSKG). Pursuant to the Purchase Agreement, Northern Retail's parent corporation, Northern Pacific Corporation (Northern Pacific), now defendant NP Holding, Inc. (NP), agreed to

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

assume all of Perry's liabilities [1] and indemnify Perry for damages incurred relating to the Auto Works Division. According to the indemnification provision of the Purchase Agreement, the purchaser

> indemnifies and agrees to hold Perry harmless from and against any and all liabilities, losses, damages, costs and expenses, including reasonable attorneys fees, incurred or sustained by Perry resulting from (i) any inaccuracy in, or breach or violation of, the representations, warranties and covenants made by Purchaser herein, or (ii) any and all claims asserted against Perry which relate to the properties or operations of the Auto Works Division, regardless of the basis for such claims or whether Perry knew or had reason to know of any such claim or the basis for any such claim on the date hereof.

J.A. at 82.

Subsequent to the Purchase Agreement but prior to closing, Northern Retail assigned the Purchase Agreement to its newly-formed subsidiary, Auto Works Holding, Inc. (Auto Works, Inc.). At closing on February 29, 1988, Perry transferred the Auto Works Division to Auto Works, Inc., with the assumption of liabilities instrument executed by Auto Works, Inc. [2]

In 1993, Northern Retail sold Auto Works, Inc. to Hahn Automotive Warehouse, Inc. (Hahn), [3] and in 1997, Hahn put Auto Works, Inc. into bankruptcy. In 1995, Northern Retail became CSKG, a subsidiary of CSK Auto Corporation (CSK), and in 1996, CSK dissolved CSKG, transferring to itself (CSK) all of CSKG; assets subject to all of CSKG's liabilities. In 1998, Northern Pacific changed its name to NP Holding, Inc. (NP) and dissolved soon thereafter.

As a result of the Auto Works, Inc. 1997 bankruptcy, Auto Works, Inc. failed to pay rent due under leases guaranteed by Perry. [4] Subsequently, Perry, through its parent, Rite Aid Corporation (Rite Aid), demanded that CSKG and NP indemnify Perry for $531,798.91 in lease claims asserted against it. When the defendants refused to indemnify Perry for the lease claims, Perry initiated the present lawsuit.

### B. Discussion

Perry argued before the district court that it retained its indemnification agreement with CSKG after the sale of Auto Works to Auto Works, Inc., and consequently, the liability for this indemnification passed to CSK when CSKG was dissolved. Perry now argues that the district court erred by (1) granting in part appel-

---

1. Pursuant to § 2(b) of the Purchase Agreement,

 the Purchaser will execute and deliver to Perry an instrument or instrument in form reasonably satisfactory to Purchaser pursuant to which Purchaser will agree to assume and pay or discharge all liabilities and obligations of Perry relating to the operations of the Auto Works Division which (i) are reflected on the Closing Balance Sheet or (ii) are related to the executory contracts and leases to be assigned by Perry to and assumed by Purchaser as set forth on the Disclosure Schedule.
 J.A. at 50.

2. Northern Pacific also provided a written guarantee of the Auto Works, Inc. indemnity at closing.

3. Specifically, in March 1991, Northern Retail transferred all of the capital stock of Auto Works. Inc. to United Automotive Holdings Corporation (UAH) in exchange for 100 shares of UAH common stock. In July 1993, UAH transferred the capital stock of Auto Works, Inc. to Northern Automotive Holdings Corporation (NAH), which, in turn, transferred that stock to Hahn.

4. The Auto Works Division was a subtenant of Perry at several of the leased properties.

lees' motion to dismiss for lack of personal jurisdiction, (2) granting appellees' motion for summary judgment on the issue of novation, and (3) assigning damages of $1.00. In response, the defendants argue, by way of cross-appeal, that the district court erred by granting Perry's motion for summary judgment as to NP.

This Court must "apply a clearly erroneous standard of review to the district court's findings of fact and a de novo standard to its conclusions of law." *Tucker v. Calloway Cty. Bd. of Educ.*, 136 F.3d 495, 503 (6th Cir.1998). Pursuant to this standard, we review district court's dismissal for lack of personal jurisdiction *de novo*. *Tobin v. Astra Pharmaceutical Prods.*, 993 F.2d 528, 542 (6th Cir.), *cert. denied*, 510 U.S. 914, 114 S.Ct. 304, 126 L.Ed.2d 252 (1993). Further, we review *de novo* the district courts grant of summary judgment, using the same Rule 56(c) standard used by the district court, *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir.1999) (en banc), and considering the record as it stood before the district court at the time of its ruling. *Niecko v. Emro Marketing Co.*, 973 F.2d 1296, 1303 (6th Cir.1992).

## 1. In Personam Jurisdiction

 The district court found that CSKG's Plan of Complete Liquidation and Dissolution did "not amount to an 'express assumption' of personal liability" for CSK, meaning that CSK is not CSKG's "successor" and hence cannot be amenable to personal jurisdiction in Michigan "simply because it owns some or all of a subsidiary corporation subject to personal jurisdic-

tion." *Perry Drug Stores, Inc. v. CSK Auto Corp.*, No. 98–71782, slip op. at 7 (E.D.Mich. May 6, 1999) (citing *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1274 (6th Cir.1998)).[5] Perry disagrees, arguing on appeal that Michigan had jurisdiction over CSK because CSK had purposefully dissolved its subsidiary CSKG.

Any exercise of personal jurisdiction must comport with the Due Process Clause of the Fourteenth Amendment. However, the constitutional question does not arise until the Court determines that the defendant is subject to personal jurisdiction under Michigan's long-arm statute.[6] *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir.1996). Here, however, the Michigan long-arm statute is coextensive with the Due Process Clause. *Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir.1992). Thus, this Court need only determine whether the district court's exercise of personal jurisdiction over CSK comported with due process. *Id.*

The district court properly found that it could exercise personal jurisdiction over CSKG and NP, as both had "purposefully availed" themselves of the privilege of doing business in Michigan. *See So. Mach. Co. v. Mohasco Ind., Inc.*, 401 F.2d 374, 381 (6th Cir.1968). Therefore, the only issue that remains before us is whether jurisdiction can be extended to CSK, a foreign corporation which has no contacts with Michigan, *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980), but which took over all of the assets of CSKG, a

---

5. The district court, however, found that it could exercise personal jurisdiction over CSKG and NP, as such jurisdiction comported with the requirements of due process (under the "purposeful availment" test) and satisfied Michigan's long-arm statute, M.C.L. § 600.715 (requiring "the transaction of any business within the state").

6. A district court has personal jurisdiction over any defendant that "could be subjected to the jurisdiction of a court of general jurisdiction in the state in which the district court is located." Fed.R.Civ.P. 4(k)(1)(A).

corporation subject to Michigan jurisdiction. After considering the case law, we hold that jurisdiction may be extended to CSK.

A court may impute the jurisdiction of a corporate predecessor to its successor where the successor expressly assumed the liability of the predecessor corporation. *Jeffrey v. Rapid American Corp.*, 448 Mich. 178, 198, 529 N.W.2d 644 (1995) (noting that "express assumption of liability is a deliberate undertaking ... that amounts to purposeful availment of Michigan opportunities"). It appears clear to the Court that CSK expressly assumed all of CSKG's liability at CSKG's dissolution, availing itself of the privilege of conducting activities in Michigan. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985). By CSKG's Plan of Complete Liquidation and Dissolution, it agreed to "liquidate and distribute to its sole shareholder [CSK] all of its assets in complete liquidation of the Corporation, *subject to all debts, obligations, contracts and liabilities of the Corporation.*" (emphasis added). This shows at least a prima facie case that CSK expressly assumed CSKG's liability. *Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co.*, 91 F.3d 790, 793 (6th Cir.1996). Further, from a policy standpoint, the Court notes that a contrary result would allow corporations to "immunize themselves by formalistically changing their titles." *Duris v. Erato Shipping, Inc.*, 684 F.2d 352, 356 (6th Cir.1982).

Therefore, the Court reverses the district court's decision. However, because this Court finds *infra* that CSKG bears no liability to Perry, the Court declines to remand this issue to the district court.

**2. Novation and Release of CSKG**

 Under Michigan law, novation requires compliance with the following re-

quirements: "(1) parties capable of contracting; (2) a valid obligation to be displaced; (3) the consent of all parties to the substitution based upon sufficient consideration; (4) the extinction of the old obligation and the creation of a valid new one." *Macklin v. Brown,* 111 Mich.App. 110, 314 N.W.2d 538, 540 (Mich.1981); *Gorman v. Butzel,* 272 Mich. 525, 262 N.W. 302, 304 (Mich. 1935). In determining the existence of each requirement, "[t]he circumstances surrounding a series of transactions may be considered, in addition to the text of any written instruments, in determining whether the parties reached a novation that extinguished the liability of one debtor and substituted for it the liability of another." *Imperial Hotels Corp. v. Dore,* 257 F.3d 615, 620 (6th Cir.2001); *Keppen v. Rice,* 257 Mich. 299, 241 N.W. 156, 157 (Mich.1932) (requiring that novation "need not be expressed in writing ... if it appears from the facts and circumstances surrounding the transaction").

Perry argues that Auto Works, Inc.'s purchase of the Auto Works Division did not release Northern Retail from its obligations under the Purchase Agreement. As evidence of this, Perry notes that "the Perry/Auto Works, Inc. Assignment contained no language releasing Northern Retail from its obligations under the [Purchase] Agreement." In addition, Perry enlists the assistance of its former General Counsel, whose affidavit attests to Perry's intention, albeit unexpressed, not to release Northern Retail under the Purchase Agreement. Lastly, Perry points to its work with Northern Retail following the Auto Works, Inc. assignment to reach a final selling price for the Auto Works Division transaction.[7]

---

7. The Purchase Agreement provided that the final amount due for the Auto Works Division

While Perry's assertions are true, *Imperial Hotels*, 257 F.3d at 620–21 (noting that "a third party's payment accepted by a creditor does not, without more, establish a novation"), Perry's position vis-a-vis Northern Retail is undercut by its own actions. First, and most important, Perry closed the deal with Auto Works, Inc., not Northern Retail, after Northern Retail assigned the Purchase Agreement to Auto Works, Inc. The closing document between Perry and Auto Works, Inc. specifically added Auto Works, Inc. to the assumption of liabilities clause in the Purchase Agreement. Further, Perry's own subsequent agreements with Auto Works, Inc., in which the two parties (absent Northern Retail), in their First Amendment to the Purchase Agreement, specifically acknowledge that Auto Works, Inc. "did assume all of the obligations of Northern [Retail] under the Purchase Agreement."[8] While assumption does not necessary function as a novation, *Imperial Hotels*, 257 F.3d at 622, this subsequent agreement nevertheless shows both Perry and Auto Works, Inc.'s intention to cause a novation. *Gorman*, 272 Mich. at 531, 262 N.W. at 302 (considering a subsequent contract which did not mention the assignor as evidence of an intention to cause a novation); *BRB Printing, Inc. v. Buchanan*, 878 F.Supp. 1049, 1053 (E.D.Mich.1995).

We find that CSKG's assignment of the Purchase Agreement to Auto Works, Inc., combined with all the circumstances surrounding the transactions, constitutes "consent by the creditor to take the new debtor as his sole security and to extinguish the claim against the former debtor." *Harrington–Wiard Co. v. Blomstrom Mfg. Co.*, 166 Mich. 276, 131 N.W. 559, 563 (Mich.1911) (citing *Butterfield v. Hartshorn*, 7 N.H. 345 (N.H.1834)). By this novation, CSKG's indemnity obligations attached to Auto Works, Inc. *See Leila Hosp. and Health Ctr. v. Xonics Med. Sys., Inc.*, 948 F.2d 271 (6th Cir.1991). Therefore, no genuine issues of material fact exist as to CSKG's liability, and the district court did not err in granting summary judgment in favor of CSKG.

### 3. Damages

▮ Once CSK and CSKG had been dismissed, leaving only NP as a defendant in the present case, the district court requested that Perry and NP reach some agreement stipulating to NP's precise liability for the twenty-six leases in question. When Perry and NP failed to reach such an agreement, the district court, noting that NP is a dissolved corporation with no assets, found the value of the twenty-six leases to be $1.00.[9]

Perry now complains that the district court "clearly erred in arbitrarily assigning a one ($1.00) dollar value to summary judgment in Perry's favor." The Court agrees. Although NP appears not to have any assets, making collection of a judgment against it nearly impossible, Perry nevertheless had a right to have the damages against it assessed by the district court on the basis of the "pleadings, depo-

---

was subject to downward adjustment based upon the closing balance sheet.

**8.** Northern Pacific, however, did separately consent to the First Amendment to the Purchase Agreement, agreeing not to "release or diminish the obligations of [Northern Pacific] as the guarantor of the Purchaser's obligations under the [Purchase] Agreement." Perry argues that this evidenced NP's guarantee of Northern Retail's obligations. The Court sees no evidence of Northern Retail's obligation in Northern Pacific's guarantee of the *purchaser's* obligations.

**9.** The district court noted that finality was the "real issue" in the case, as Perry required a final order (of any dollar amount) to permit the present appeal.

sitions, answers to interrogatories, and admissions on file, together with the affidavits . . . ." *See* Fed.R.Civ.P. 56(c). In the present matter, there is some evidence—specifically, the affidavit of Lawrence Gelman, Rite Aid's Vice President–Real Estate Law–to suggest that Perry paid $531,798.91 to resolve the claims made against it for Auto Works, Inc. leases. However, it is not clear that NP owes the entirety of this amount as the guarantor of the indemnification provision taken on by Auto Works, Inc.

The appellees, in their cross-appeal, argue that the district court failed to distinguish between the obligations of Auto Works, Inc., which bears no liability to Perry, and the Auto Works Division, for which NP provided no indemnity. The Court finds this to be a legitimate basis for inquiry in the assessment of whether, or how much, liability NP bears for Perry's loss. Therefore, this matter must be remanded to the district court.

## C. Conclusion

For the foregoing reasons, we affirm in part and reverse in part the decision of the district court. We remand solely the issue of NP's liability and damages to the district court for proceedings not inconsistent with this opinion.