NOT RECOMMENDED FOR PUBLICATION
File Name: 07a0543n.06
Filed: August 2, 2007

NO. 06-1924

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

PERRY DRUG STORES,

|  |  |
|---|---|
| **Plaintiff-Appellee,** | **ON APPEAL FROM THE** |
| v. | **UNITED STATES DISTRICT** |
|  | **COURT FOR THE EASTERN** |
| **NP HOLDING CORPORATION,** | **DISTRICT OF MICHIGAN** |
| **Defendant-Appellant.** |  |

_____/

BEFORE:    SUHRHEINRICH and GIBBONS, Circuit Judges; and HEYBURN, District Judge.[*]

**PER CURIAM.** Defendant-Appellant NP Holding Corporation ("NP") appeals the district court's order (1) adopting the report and recommendations of a special master; and (2) entering judgment in favor of Plaintiff-Appellee Perry Drug Stores ("Perry"), in the amount of $1,191,381.96. For the reasons set forth below, we **AFFIRM** the decision of the district court.

## I. Background

This matter is before this Court on appeal for the second time. In the first appeal, we remanded the case to the district court for its consideration of damages against NP as guarantor of an indemnity provision included in a January 22, 1988 purchase agreement ("Agreement"). In this appeal, we consider NP's challenge to the district court's judgment awarding Perry damages of $1,191,381.96. The Agreement, which contained the indemnification provision at issue, provided

_____

[*]The Honorable John G. Heyburn, II, United States Chief District Judge for the Western District of Kentucky, sitting by designation.

that Perry would sell Auto Works Division ("AWD"), a chain of auto parts stores, to Northern Retail Corp. ("Northern Retail"), a subsidiary of NP's predecessor-in-interest.[1]

The Agreement provided that the purchaser, then Northern Retail, would indemnify Perry from claims asserted against Perry that relate to AWD. The indemnity provision reads:

> The purchaser indemnifies and agrees to hold Perry harmless from and against any and all liabilities, losses, damages, costs and expenses, including reasonable attorneys fees, incurred or sustained by Perry resulting from (i) any inaccuracy in, or breach or violation of, the representations, warranties and covenants made by Purchaser herein, or (ii) any and all claims asserted against Perry which relate to the properties or operations of [AWD], regardless of the basis for such claims or whether Perry knew or had reason to know of any such claim or the basis for any such claim on the date hereof.

The basis for NP's liability to Perry in the instant litigation is NP's guaranty of the purchase agreement. NP executed an instrument promising to guaranty the performance of the purchaser under the Agreement. The guaranty provided that "[NP] . . . does hereby guarantee the full and complete performance by Purchaser of all of its obligations under this Purchase Agreement . . . ."

Prior to closing on the Agreement, Northern Retail assigned the Agreement to its newly-formed subsidiary, Auto Works Holding, Inc. ("AWHI"). AWHI thus became the purchasing entity. At the closing, Perry transferred AWD to AWHI, and AWHI signed an assumption of liabilities instrument, agreeing to "assume and pay or discharge all liabilities and obligations of Perry relating to the operations of [AWD] which . . . are related to the executory contracts and leases to be assigned by Perry to and assumed by Purchaser." On February 29, 1988, NP's counsel sent a letter to Perry stating that "[t]he Guaranty constitutes a valid and binding obligation of [NP], enforceable against [NP] in accordance with its terms."

---

[1]Northern Retail is now known as CSKG, Inc. At the time the parties entered into the Agreement, NP's predecessor-in-interest was Northern Pacific Corp. ("Northern Pacific").

On December 14, 1989, NP signed a First Amendment to the Purchase Agreement, acknowledging that the Amendment "shall not act to release or diminish the obligations of [NP] as the guarantor of the [AWHI]'s obligations under the Purchase Agreement."

In 1994, AWD and AWHI merged as AWD. In 1997, AWD filed for bankruptcy, and failed to pay rents due under certain leases guaranteed by Perry prior to its 1988 sale of AWD to AWHI. Perry's parent corporation, Rite Aid Corporation ("Rite Aid"), paid these liabilities.

Perry subsequently demanded indemnification from NP and Northern Retail. In 1998, Perry initiated this action in federal district court against NP and numerous other entities. In December of 2000, the district court entered summary judgment for Perry. Because AWD had dissolved and had no assets, the district court awarded Perry damages of $1.00.

Perry then appealed to this Court, which affirmed the dismissal of certain defendants for lack of personal jurisdiction, but reversed the damage award, and the case was remanded to the district court for a proper assessment of damages against NP, specifically "whether, or how much, liability NP bears for Perry's loss" as the guarantor of the indemnification provision. *See Perry Drugs Stores v. CSK Auto Corp.*, Nos. 01-1498, 01-1547, 93 F. App'x 677, 683 (6th Cir. 2003).

On remand, the parties agreed to the appointment of a special master ("Special Master") for purposes of making "all of the factual findings and legal conclusions necessary to determine . . . the issue of NP's liability and damages," and further agreed that the Special Master's findings of fact "shall be final and conclusive and that only conclusions of law will thereafter be considered by the court." On April 7, 2005, the Special Master issued his report and recommendation as to the liability and damages of the defendant. A second report and recommendation on attorney's fees was filed on May 1, 2006.

In his first report, the Special Master made twenty-nine conclusive findings of fact, including that: (1) Perry guaranteed or subleased each AWHI lease claim at issue; (2) Perry, through Rite Aid, its corporate parent, was requested to pay the AWHI lease obligations; (3) Perry, through Rite Aid, paid $683,621.83 to satisfy AWHI lease obligations; (4) Perry transferred AWD to AWHI with an assumption of liabilities instrument executed by AWHI; and that (5) NP guaranteed AWHI's indemnity obligations, and was liable for $683,621.83. The report also contained thirteen conclusions of law, including that: (1) Perry, not Rite Aid, was obligated to pay the unpaid AWHI lease obligations; (2) NP guaranteed AWHI's full and complete performance as Perry's indemnitor; (3) Perry did not intend to release NP's guaranty; (4) NP reaffirmed its guaranty after the closing transaction the court found created an implied novation of Northern Retail; (5) the implied novation of Northern Retail did not discharge NP's guaranty because Perry manifested its intent to retain its claims against NP by obtaining a reaffirmation of the guaranty during and after the closing; and that (6) Rite Aid's payment of Perry's obligations was not a defense against Perry's claims against NP.

The Supplemental Report contained eight conclusive findings of fact, including that the Agreement contained a broad indemnification provision, which covered "costs causally related to at least two classes of occurrences at issue in the case: i) breaches/violations of the purchasers' covenants (i.e., breaches of the promises contained in the purchase agreement) and ii) claims asserted against Perry relating to the properties or operations of [AWD]." The Supplemental Report also found that: (1) NP guaranteed AWHI's performance of the Indemnity; (2) Perry, through Rite Aid, incurred attorneys' fees in defending AWHI lease claims and in prosecuting the instant litigation, caused by NP's failure to indemnify Perry; and that (3) Perry incurred $450,386.50 in attorney fees and $57,373.63 in costs. The Supplemental Report contained five conclusions of law, including that:

(1) the indemnity provision included attorneys' fees, AWD lease claims asserted against Perry, and breaches of the indemnity provision itself; (2) that Perry's attorneys' fees were caused by claims asserted against Perry which related to the properties or operations of AWD and NP's breach of its guaranty of the Indemnity; and (3) that Perry was entitled to recover $450,386.50 in attorneys' fees, as well as costs totaling $57,373.63.

Upon de novo review of the legal issues, the district court adopted the Special Master's findings in both reports in their entirety, and entered judgment in favor of Perry in the amount of $1,191,381.96. NP appeals, raising multiple grounds for error.

## II. Analysis

### A. NP's Liability as Indemnitor/Guarantor

NP first contends that it was improperly found liable as guarantor because: (1) the Special Master's reports adopted in the district court's order did not find a basis on which AWHI was liable; and (2) Perry's claim improperly relied on the obligations of Northern Retail and AWD to seek liability against NP.

This Court must accept the Special Master's factual findings unless they are clearly erroneous. *Demjanjuk v. Petrovsky*, 10 F.3d 338, 340 (6th Cir. 1993). We review conclusions of law de novo. *See Carter-Jones Lumber Co. v. Dixie Distrib. Co.*, 166 F.3d 840, 846 (6th Cir. 1999).

NP's cannot claim that there was no basis for which it was liable to Perry for AWHI's indemnification obligations. In the first appeal, we held that, pursuant to novation, Northern Retail's indemnity obligations became the obligation of AWHI. *Perry Drug Stores*, 93 F. App'x at 682. We also noted that NP guaranteed AWHI's indemnity obligations under the Agreement: (1) at the closing of the Agreement, *id*. at 679 n.2 (*"*[NP] . . . provided a written guarantee of the [AWHI]

-5-

indemnity at closing."); and (2) pursuant to the First Amendment to the Agreement. *Id.* at 682 n.8 ("[NP] . . . consent[ed] to the First Amendment to the Purchase Agreement, agreeing not to 'release or diminish the obligations of [NP] as the guarantor of the [AWHI's] obligations under the [] Agreement.'").

Having established that NP is responsible as guarantor of AWHI's indemnity obligations, we turn to the issue of whether the specific leases for which NP was found liable as guarantor in the Special Master's report were contemplated by the indemnity provision in the Agreement. "Indemnity contracts are construed in accordance with the general rules for construction of contracts." *Grand Trunk Western R, Inc v. Auto Warehousing Co.*, 686 N.W.2d 756, 761 (Mich. Ct. App. 2004). "An unambiguous contract must be enforced according to its terms." *Burkhardt v. Bailey*, 680 N.W.2d 453, 464 (Mich. Ct. App. 2004). If indemnity contracts are ambiguous, the trier of fact must determine the intent of the parties. *Badiee v. Brighton Area Sch..*, 695 N.W.2d 521, 531 (Mich. Ct. App. 2005) (citing *Sherman v. DeMaria Bld Co., Inc.*, 513 N.W.2d 187 (Mich. Ct. App. 1994)). "While it is true that indemnity contracts are construed strictly against the party who drafts them and against the indemnitee, it is also true that indemnity contracts should be construed to give effect to the intentions of the parties." *Id*.

The language used in the indemnification provision of the Agreement uses "broad all-inclusive" language very similar to the language of the indemnification provision construed by the Michigan Court of Appeals in *Triple E Produce Corp. v. Mastronardi Produce, Ltd.*, 530 N.W.2d 772, 776 (Mich. Ct. App. 1995). In *Triple E*, the indemnification provision at issue provided:

Seller shall unconditionally indemnify and hold harmless . . . Buyer . . . against and

in respect of any and all liabilities, loss, cost, damage, interest, legal fees and other expenses, of whatsoever kind or nature incurred by . . . Buyer and/or their successors and assigns, by reason of: (a) any claims, of whatsoever kind or nature, against Corporation of any nature, whether accrued, matured, unmatured, absolute, contingent or otherwise and which arise out of the operations of Corporation prior to the closing date, or which are based upon any facts in existence prior to the closing date which are known to Seller, or should have been known to Seller . . . or (d) any breach of any representation, warranty or covenant contained in this Agreement.

*Id*. at 775. The Michigan Court of Appeals held that the "the use of the term 'all' in an indemnity clause has been interpreted to provide for the broadest possible indemnification," and construed the indemnification clause against the indemnitor. *Id*. at 776.

Here, the indemnification provision also includes the term "all" in reference to the scope of liability provided by the indemnification provision. The indemnification provision signed by AWHI obligates AWHI to indemnify Perry against "any and all liabilities, losses, damages, costs and expenses, including reasonable attorneys fees, incurred" from AWD's operations. Like the indemnification language in *Triple E*, the indemnification language in the Agreement is broad and all-inclusive. Because the indemnification provision provided "the broadest possible indemnification," AWHI was under an obligation to indemnify Perry for any AWD lease claims for which Perry incurred liability. The Special Master found that Perry incurred liability in the amount of $683,621.83 for AWD lease claims, which we do not find clearly erroneous. NP, as AWHI's guarantor, is equally liable for this amount for indemnification of Perry, given that the "liability of the sureties is coextensive with the liability of the principal." *See City of Ferndale v. Florence Cement Co.*, 712 N.W.2d 522, 528 (Mich. Ct. App. 2006).

However, NP argues that Perry intended to release NP from its guaranty obligations, and NP was thus released from its guaranty. The Restatement (Third) Suretyship and Guaranty § 39 provides

for the circumstances in which a secondary obligor (NP) may be discharged when the principal obligor (Nothern Retail) is released: "To the extent that the obligee releases the principal obligor from its duties pursuant to the underlying obligation[,] . . . the secondary obligor (surety) is discharged from any unperformed duties pursuant to the secondary obligation unless . . . the language or circumstances of the release otherwise show the obligee's intent to retain its claim against the secondary obligor[.]"

Here, circumstances following the release of Northern Retail, pursuant to novation, demonstrate Perry's intent to retain its claim against NP as guarantor. NP's February 29, 1988 letter expressly stated that "[t]he Guaranty constitutes a valid and binding obligation of [NP], enforceable against [NP] in accordance with its terms." The December 14, 1989 Amendment also demonstrates the intent of the parties to hold NP to its obligations under the guaranty. In light of these clear indicators of the parties' intent that NP remain bound to its guaranty, we find that NP was not released from the guaranty.

NP next argues that Perry was required to first pursue its indemnification against AWHI before enforcing NP's guaranty. However, under Michigan law, "whether the guarantee must first sue the primary obligor depends upon the type of guaranty. While the guarantee may proceed immediately against the guarantor if it is a guaranty of payment, if it is a guaranty of collection, the guarantee must first sue the primary obligor." *Brodsky v. Lehigh Valley Indus., Inc.*, 424 F. Supp. 863, 864-65 (E.D. Mich. 1976) (applying Michigan law). The guaranty in *Brodsky* guaranteed "full, prompt and complete performance" and the district court thus held that the guarantee was under no duty to proceed first against the primary obligor. *Id*. at 865. Here, NP's guaranty of "full and complete performance" employs virtually identical language as the guaranty in *Brodsky*, and contains

-8-

no language indicating that Perry must proceed first against AWHI. Therefore, Perry may proceed directly against NP without resort to suit against AWHI.

NP claims that Perry's failure to give notice to AWHI was a basis for it to avoid its indemnity obligations. Section 10(c) of the Agreement provides that "the party seeking indemnification shall promptly notify the party from whom indemnification is sought . . . provided that failure to notify the party from whom indemnification is sought on a prompt basis shall not relieve such party from its indemnity obligations hereunder." Not only does this language imply that NP is the party subject to notification–as NP is the party from whom Perry sought indemnification–but the language is clear that failure by the indemnitee to notice the indemnitor does not relieve the indemnitor of its obligations.

NP also argues that its guaranty does not apply to stores Perry subleased to AWD. However, the language of the indemnification provision provides that it applies to "any and all claims asserted against Perry which relate to the properties or operations of the [AWD]." This broad and all-inclusive language makes no distinction between subleased and store leases guaranteed by Perry. The language of the guaranty also fails to make a distinction between Perry-subleased and Perry-guaranteed stores. Instead, the guaranty promises AWHI's "full and complete performance" under the Agreement. Thus, we hold that the Perry-subleased stores were contemplated by the indemnification agreement for which NP is liable as guarantor.

**B. Payment of Perry's Liability by Rite Aid**

NP claims that because Perry's parent, Rite Aid, paid Perry's liabilities, Perry incurred no liability; and because Perry had incurred no liability, NP had no obligation to indemnify Perry. The district court found that NP "made no attempt, in spite of having every opportunity to do so, to

question whether Perry remains indebted to its corporate parent for payments the parent made on behalf of its subsidiary." While Perry has submitted evidence that Rite Aid debited its internal account when paying for Perry's liabilities, the district court's finding indicates that NP may have waived this issue by failing to timely raise it.

In any event, an argument like NP's was disposed of in *Oakview Treatment Ctrs. of Kansas, Inc. v. Garrett*, 53 F. Supp.2d 1196, 1208-09 (D. Kan. 1999), which we find persuasive. In *Oakview*, the defendants argued that the plaintiff corporation's indemnity claim was barred because its parent companies had paid the costs and expenses of the underlying litigation. *Id*. at 1208. The court rejected this argument, stating that "[the defendants'] argument is based on the fact that [the plaintiff corporation's] name does not appear on actual payments made on its behalf. This does not mean that [the plaintiff corporation] did not incur the costs." *Id*. The court found that the plaintiff corporation incurred the contested costs because the parent corporation paid its subsidiaries' expenses out of a central management account, and debited any expenses paid on behalf of the plaintiff corporation. *Id*. Here, as in *Oakview*, the parent corporation (Rite Aid) made payments in satisfaction of claims against its subsidiary, the indemnitee. NP has presented evidence that its account was debited for these costs. Thus, following *Oakview*, Rite Aid's payment of claims on behalf of Perry is immaterial to NP's obligation to guaranty the indemnification.

### III. Attorneys' Fees

NP challenges the district court's award of attorneys' fees, arguing that the Agreement does not provide for an award of all of Perry's attorneys' fees sustained in the instant litigation, but only those attorneys' fees resulting from "a breach of a representation, warranty or covenant" or "claims asserted against Perry." We review a district court's award of attorney fees for an abuse of

discretion. *Cohn v. Nat'l Board of Trial Advocacy*, 238 F.3d 702, 704 (6th Cir. 2000). An abuse of discretion exists where this court is firmly convinced that a mistake has occurred, *Southward v. South Cent. Ready Mix Supply Corp.*, 7 F.3d 487, 492 (6th Cir. 1993), or where a district court has relied upon clearly erroneous findings. *Romstadt v. Allstate Ins. Co.*, 59 F.3d 608, 615 (6th Cir. 1995).

"The parties to a contract may include a provision that the breaching party will be required to pay the other side's attorney fees and such provisions are judicially enforceable." *Zeeland Farm Servs., Inc. v. JBL Enters., Inc.*, 555 N.W.2d 733,736 (Mich. Ct. App. 1996). A party's recovery under such a provision is "limited to reasonable attorney fees." *Id*.

The indemnification provision specifically provides for the indemnification of reasonable attorneys' fees, stating in relevant part that AWHI indemnifies against "any and all . . . costs and expenses, including reasonable attorneys['] fees, incurred or sustained by Perry resulting from . . . [(1)] any . . . breach or violation of . . . [the] warranties and covenants made by [AWHI]"; or (2) "claims asserted against Perry which relate to the properties or operations of [AWD][.]"

NP argues that because it did not itself breach the indemnification provision, Perry can only recover attorneys' fees incurred in defending against third-party AWD lease claims. However, the indemnification provision provides for attorneys' fees resulting from AWD lease claims, and Perry's attorneys' fees in the instant litigation are result of AWD lease claims, namely because Perry's satisfaction of AWD lease claims caused it to pursue NP for its guaranty of indemnification.

The use of the term "all" in an indemnity clause has been interpreted to provide for the broadest possible indemnification. *Triple E*, 53 NW.2d at 776. Under a broad interpretation of the indemnification provision, the district court did not err in its award of damages.

Additionally, NP contends that the "record establishes that it was Rite Aid, and not Perry, for whose benefit the fees were incurred and the entity that contracted for and paid the legal fees that were awarded." We find this argument to be without merit for the same reasons we found this argument unpersuasive with respect to Rite Aid's payment of Perry's lease liabilities. *See Oakview*, 53 F.Supp.2d at 208-09.

## IV. Reference to the Special Master

Finally, NP contends "[t]he referral of the legal fee issue to the Special Master was not authorized under Fed. R. Civ. P. 53 and the procedures there specified were not followed." A district court may appoint a master to "perform duties consented to by the parties." Fed. R. Civ. P. 53(a)(1)(A). Pursuant to Rule 53, on April 5, 2004, the district court entered a stipulated order of reference appointing the Special Master to determine "the issue of NP's liability and damages." While the order did not explicitly authorize the Special Master to determine NP's liability for attorneys' fees, such issue clearly pertains to NP's liability and damages. Like the issue of NP's liability for AWD lease obligations, NP's liability for attorneys' fees was determined pursuant to NP's guaranty of AWHI's indemnity obligations under the Agreement. Consequently, it cannot be said that the Special Master was without authority in determining NP's liability for attorneys' fees.

## V. Conclusion

For the foregoing reasons, we **AFFIRM** the decision of the district court.